FILED
COURT OF APPEALS
DIVISION II

2014 OCT 21 AM 9: 13

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | Consol. Nos. 44264-7-II |
| Respondent, | 44770-3-II |
| | 45628-1-II |
| v. | |
| KRIS A. SAEGER, | UNPUBLISHED OPINION |
| Appellant. | |
| In re the Personal Restraint Petition of | |
| KRIS A SAEGER, | |
| Petitioner. | |

MAXA, J. — Kris Saeger appeals his conviction after a bench trial of three counts of felony harassment, and the trial court's sentence imposing 29 months confinement, a 5-year no-contact order with the victims, and $1,910 in legal financial obligations (LFOs). We hold that: (1) although the trial court initially failed to enter written findings of fact and conclusions of law after trial, it remedied this error following a ruling from this court's commissioner; (2) the trial court's no-contact sentencing condition, which effectively precluded Saeger from living in his residence, was a valid crime-related prohibition that furthered compelling state interests in protecting Saeger's victims from further crimes and did not violate his right to travel; (3) Saeger did not preserve for appeal his challenge to the trial court's finding that he had the ability to pay LFOs; and (4) Saeger's challenge to the order imposing LFOs is not ripe for review.

In two statements of additional grounds (SAGs) and a personal restraint petition (PRP), Saeger addresses numerous additional grounds for appeal. We hold that these claims have no merit.

We affirm Saeger's convictions and sentence.

FACTS

On September 5, 2012, Salvador Gaspar-Guerrero, his wife, and their daughter were awoken by loud music. The music was playing on a stereo outside Saeger's trailer, which was adjacent to the Gaspar-Guerreros' property. In addition to the loud music, Gaspar-Guerrero heard other noises and went outside to investigate.

Once outside, Gaspar-Guerrero heard Saeger arguing with Jose Casterina. Casterina lives in a recreational vehicle on Gaspar-Guerrero's property. Gaspar-Guerrero heard Saeger say to Casterina, "I'll blow you all up." Report of Proceedings (RP) at 22. As Gaspar-Guerrero approached Saeger, Saeger told Gaspar-Guerrrero, "I'll blow you all up." RP at 22. Gaspar-Guerrero then told Saeger that he had called law enforcement and that they were on their way, to which Saeger responded, "I'll blow them up too." RP at 22. Gaspar-Guerrero interpreted "blow you all up" as a threat to shoot them. RP at 22. Gaspar-Guerrero's wife and daughter were watching the dispute from the porch and heard Saeger make these threats.

This incident was not the first time Saeger had acted in this manner. A year earlier Saeger had been convicted on three counts of gross misdemeanor harassment for threatening members of the Gaspar-Guerrero family. The Gaspar-Guerreros testified at trial that Saeger threatened them in the past, and that they have had to call the police on him several times. Gaspar-Guerrero and his family believed that Saeger would carry out the new threats because he had been violent and

2

scary in the past when under the influence of alcohol and had been arrested on one occasion when he attempted to physically harm Gaspar-Guerrero.

The State charged Saeger with three counts of felony harassment, RCW 9A.46.020(1)(a)(i), (2)(b), for threatening to kill Gaspar-Guerrero, his wife, and his daughter. Saeger waived his right to a jury trial. At trial, Saeger testified that he did not have any contact with the Gaspar-Guerreros that night and that he did not threaten to shoot them.

After a bench trial, the trial court found Saeger guilty on all three counts. The trial court made oral findings of fact and conclusions of law, but did not enter written findings of fact and conclusions of law.

The trial court sentenced Saeger to 29 months confinement. As a part of the judgment and sentence, the trial court issued a no-contact order against Saeger providing that he shall not have contact with the Gaspar-Guerreros until November 26, 2017. The no-contact order also provided that Saeger was prohibited from coming within 500 feet of the Gaspar-Guerreros' residence, workplace, or school.

The trial court also imposed legal financial obligations against Saeger, including a $500 victim assessment, $200 in filing fees, $260 for service via sheriff, $850 in fees for a court appointed attorney, and $100 for a deoxyribonucleic acid (DNA) collection fee. The trial court entered a finding in the judgment and sentence that "[t]he defendant has the ability or likely future ability to pay the legal financial obligations imposed herein." Clerk's Papers (CP) at 8. In making this finding, the trial court further stated that it "has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's

financial resources and the likelihood that the defendant's status will change." CP at 7-8. Saeger did not object.

Saeger filed a notice of appeal. While this appeal was pending, Saeger filed a motion with the trial court for an order modifying the 500 foot no-contact restriction to 100 feet because the order as given would restrict Saeger from access to his only place of residence. The court indicated it was "aware of the approximate distance" between the two residences when it made its decision to impose the no-contact provision and declined to revise the no-contact sentencing condition. RP (Apr. 8, 2013) at 3. Following the denial of the motion to modify the no-contact order, Saeger filed a second notice of appeal. Shortly thereafter, Saeger also filed a PRP.

We consolidated Saeger's PRP with his direct appeals. We also ordered the State to present, and the trial court to enter, written findings of fact and conclusions of law. Consistent with this court's order, the trial court entered written findings of fact and conclusions of law.

## ANALYSIS

A. FAILURE TO ENTER WRITTEN FINDINGS AND CONCLUSIONS

Saeger argues that the trial court erred when it failed to enter written findings of fact and conclusions of law as required by CrR 6.1. CrR 6.1(d) requires trial courts to enter written findings of fact and conclusions of law following a bench trial, and failure to do so generally requires remand for entry of written findings and conclusions. *State v. Head*, 136 Wn.2d 619, 621-22, 624, 964 P.2d 1187 (1998).

However, on May 2, 2014, this court's commissioner issued a ruling ordering the entry of written findings of fact and conclusions of law, and on May 15, 2014, the trial court entered written findings of fact and conclusions of law. Because Saeger was granted his requested relief as a result

4

of this commissioner's ruling, and because he does not allege that he was actually prejudiced by the delay in entry of written findings and conclusions, this issue has been resolved and needs no further attention from this court.

B.     NO CONTACT SENTENCING CONDITION

As a condition of Saeger's sentence, the trial court barred Saeger from coming into contact with the Gaspar-Guerreros and from coming within 500 feet of the Gaspar-Guerreros' residence, workplace, or school for five years. Because his residence[1] was within 500 feet of the Gaspar-Guerrero residence, Saeger effectively was prevented from living in his residence for up to five years. Saeger argues that this condition violates his constitutional right to travel and reside, and his right to equal protection. We disagree because this crime-related sentencing condition was reasonably necessary to support the state's compelling interest in protecting the victims of Saeger's crime.

1.     Standard of Review

The Sentencing Reform Act of 1981, chapter 9.94A RCW, authorizes a trial court to impose crime-related sentencing conditions, including no-contact orders, as a part of a defendant's sentence. RCW 9.94A.505(8); *see also State v. Armendariz*, 160 Wn.2d 106, 112-13, 156 P.3d 201 (2007). A "[c]rime-related prohibition" is defined as "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). We generally review the imposition of crime-related prohibitions imposed as sentencing conditions for an abuse of discretion. *State v. Corbett*, 158 Wn. App. 576, 597, 242

---

[1] At the time Saeger was residing in a trailer home on property owned by his mother. Saeger contends this is the only piece of property where he can afford to live.

5

P.3d 52 (2010). "Abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *Corbett*, 158 Wn.2d at 597. Abuse of discretion also occurs when the trial court uses the wrong legal standard. *State v. Lord*, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007). Sentencing conditions usually are upheld if they are reasonably crime-related. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

Here, the sentencing condition clearly was related to Saeger's crime of felony harassment. However, where sentencing conditions interfere with fundamental rights, a more careful review is required. *Warren*, 165 Wn.2d at 32. Such conditions must be "sensitively imposed" and "reasonably necessary to accomplish the essential needs of the State and public order." *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010) (quoting *Warren*, 165 Wn.2d at 32). Under this standard, the court examines whether the sentencing condition (1) furthers a compelling state interest and (2) is reasonably necessary in scope and duration. *See Rainey*, 168 Wn.2d at 377-82. "The extent to which a sentencing condition affects a constitutional right is a legal question subject to strict scrutiny." *Rainey*, 168 Wn.2d at 374. Nevertheless, because the determination to impose a crime-related prohibition is "necessarily fact-specific" and is "based upon the sentencing judge's in-person appraisal of the trial and the offender, the appropriate standard of review remains abuse of discretion." *Rainey*, 168 Wn.2d at 374-75.

2. Fundamental Right to Travel

The sentencing condition implicates Saeger's right to travel. "The freedom to travel throughout the United States has long been recognized as a basic right under the United States Constitution." *State v. Lee*, 135 Wn.2d 369, 389, 957 P.2d 741 (1998). Orders excluding an

individual from a geographic area encroach on an individual's right to travel, which includes the right to travel within a state. *See State v. Sims*, 152 Wn. App. 526, 531, 216 P.3d 470 (2009), *aff'd* 171 Wn.2d 436 (2011).

However, our Supreme Court has held that "freedom of movement may not be used to impair the individual rights of others." *Lee*, 135 Wn.2d at 390. Convicted felons may have reasonable restrictions placed on their ability to travel throughout the state freely without violating their right to travel. *See State v. McBride*, 74 Wn. App. 460, 466, 873 P.2d 589 (1994). The propriety of geographic restrictions turns on the individual facts of each case. *State v. Schimelpfenig*, 128 Wn. App. 224, 230, 115 P.3d 338 (2005).

### 3.   State's Interest

The State has a significant interest in protecting the Gaspar-Guerrero family. Preventing an individual from becoming the victim of a threatened crime is a compelling state interest. *Schimelpfenig*, 128 Wn. App. at 229. This compelling interest may make a geographic restriction on the defendant's travel appropriate when the defendant represents a continuing threat to his victims after release. *See Schimelpfenig*, 128 Wn. App. at 229.

Numerous courts have acknowledged that a sentencing condition imposing a no-contact order with victims of a crime furthers a compelling interest in preventing future harm. *See, e.g.*, *Rainey*, 168 Wn.2d at 377 (holding that a no contact order with the defendant's wife and daughter, both victims of the defendant's crimes, furthered a compelling state interest in protecting the victims from future harm); *Corbett*, 158 Wn. App. at 600-01 (holding that a protective order with the defendant's minor children furthered a compelling interest in protecting the children from future harm because the children fell within the defendant's class of victims); *State v. Berg*, 147

Wn. App. 923, 942-43, 943-44, 198 P.3d 529 (2008) (holding protective order with defendant's female children furthered compelling interest in protecting children from the same type of harm), *abrogated on other grounds by State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011).

Here, there was sufficient evidence for the court to find that Saeger presented a continuing threat to the Gaspar-Guerreros. A year before the events that led to this conviction, Saeger had been convicted on three counts of gross misdemeanor harassment for threatening members of the Gaspar-Guerrero family. The Gaspar-Guerreros testified at trial that Saeger threatened them in the past, and that they have had to call the police on him several times. Mrs. Gaspar-Guerrero addressed the court at the sentencing hearing for the present conviction, stating "[m]y children are very scared of Mr. Saeger. We thought the last incident . . . when this happened the last time that things would get better, and it hasn't. . . . [My children are] afraid that when he does come out that we don't know what to expect." RP at 95-96. In addition, Saeger had four prior felony convictions, including multiple convictions for violating court orders.

In light of this evidence, it was reasonable for the court to conclude that Saeger posed a continuing threat to the Gaspar-Guerrero family, and that protecting the family from becoming victims of a future crime was a compelling state interest.

4. Reasonable Necessity

A restriction imposed on a fundamental right must be reasonably necessary in both scope and duration. *Rainey*, 168 Wn.2d at 377-81. "[T]he interplay of sentencing conditions and fundamental rights is delicate and fact-specific, not lending itself to broad statements and bright line rules." *Rainey*, 168 Wn.2d at 377.

For the restriction to be reasonably necessary in scope, there must be "no reasonable alternative way" to achieve the State's compelling interest. *Warren*, 165 Wn.2d at 34-35. In *Rainey*, our Supreme Court held that a no-contact order of some duration with the defendant's daughter was reasonably necessary in scope, despite amounting to a complete infringement on the defendant's fundamental right to parent. 168 Wn.2d at 380. The court determined that the complete restriction of contact with the daughter was reasonably necessary because the defendant's daughter was the means though which he harassed his victim, the daughter's mother. *Rainey*, 168 Wn.2d at 380. Washington courts have upheld crime-related prohibitions that prohibit "a defendant's access to a means or medium through which he committed a crime." *Rainey*, 168 Wn.2d at 380; *see also State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993).

Here, the trial court was aware that the proximity between Saeger and the Gaspar-Guerrero family was the means through which Saeger could harass the Gaspar-Guerrero family. Testimony at trial from the Gaspar-Guerreros established that incidents and conflicts between Saeger and their family originated from activities that Saeger engaged in on his neighboring property, such as drinking and playing loud music. It was reasonable for the trial court to conclude that the only way to further the State's compelling interest in protecting the Gaspar-Guerreros from further conflicts and threats was to prevent Saeger from coming within the neighboring proximity of the Gaspar-Guerrero residence. The trial court's decision to impose a restriction on Saeger that prohibited him from living next door to the Gaspar-Guerrero family was not an abuse of discretion even though it interferes with Saeger's rights.

The length of a no-contact prohibition must also be reasonable. *Rainey*, 168 Wn.2d at 381. "[N]o-contact orders imposed under RCW 9.94A.505(8) may be made effective for a period up to

the statutory maximum for the defendant's crime." *Armendariz*, 160 Wn.2d at 120. The statutory maximum term for felony harassment is five years. *See* RCW 9A.46.020(2)(b) (felony harassment is a class C felony); RCW 9A.20.021(1)(c) (maximum confinement for class C felony is five years). Here, the trial court imposed the no-contact condition of the five year maximum. We find no basis to question the court's exercise of discretion in imposing the statutory maximum length.

The trial court's sentencing condition was directly related to Saeger's crime, and was reasonably necessary to further the State's interest in protecting the Gaspar-Guerrero family, and was reasonable in both scope and duration. Accordingly, we hold the no-contact provision was a valid exercise of the trial court's discretion and does not constitute an unconstitutional violation of Saeger's right to freedom of movement.

## C. LEGAL FINANCIAL OBLIGATIONS

### 1. Ability to Pay LFOs

Sager argues that the trial court erred in finding that he had the ability to pay LFOs. However, we hold that Saeger did not object to the trial court's finding or decision to order LFOs during his sentencing hearing, and therefore that he failed to preserve his claims on appeal.

Saeger claims that he did object to the court's imposition of LFOs at the sentencing hearing. He asserts that his statement at the hearing that his sole source of income was from Social Security disability was an objection to the imposition of LFOs. However, this is a mischaracterization of

his statement. Sager merely informed the court of his disability, and did not raise a specific objection to the LFOs on the grounds that he was unable to pay.[2]

An objection must be specific enough to give the trial court the opportunity to correct the alleged error and give the opposing party an opportunity to respond. *State v. Avendano-Lopez*, 79 Wn. App. 706, 710, 904 P.2d 324 (1995). Here, the statement by Saeger was insufficiently specific to give the court or opposing party notice that Saeger was objecting to the imposition of LFOs in their entirety.

We have held that a defendant generally may not challenge a determination regarding the ability to pay LFOs for the first time on appeal. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013). Other divisions of our court have agreed. *State v. Duncan*, 180 Wn. App. 245, 252-53, 327 P.3d 699 (2014); *State v. Kuster*, 175 Wn. App. 420, 422, 425-26, 306 P.3d 1022 (2013); *State v. Calvin*, 176 Wn. App. 1, 302 P.3d 509, 316 P.3d 496, 507-08 (2013).

Saeger relies on *State v. Bertrand*, 165 Wn. App. 393, 267 P.3d 511 (2011), *review denied*, 175 Wn.2d 1014 (2012), to support his challenge on appeal to the trial court's finding of inability to pay. In *Bertrand*, the defendant failed to object to the finding of ability to pay and imposition of LFOs at the time of sentencing, but the court decided to review the claims anyway because the

---

[2] At the sentencing hearing, Saeger's attorney stated: "Mr. Saeger is 35 years old. He has his income Social Security Disability from post-traumatic stress disorder which occurred when he was severely beaten a couple of years ago, and that's the basis for his disability. He—we would ask the Court that if the Court imposes any time on the probation violation that it run concurrent with the current sentence. Mr. Saeger would also like the Court to consider an appeal bond in a reasonable amount that he would be able to make." RP at 97.

11

defendant was disabled and appeared likely to remain indigent, yet was required to begin paying her court-ordered LFOs within 60 days of sentencing and while still incarcerated. 165 Wn. App. at 404 n.15, 405.

Our case is distinguishable. While there was evidence that Saeger's current income came solely from Social Security disability, unlike in *Bertrand,* the court did not order the repayment of his LFOs to begin immediately. The finding that the then-disabled defendant in *Bertrand* had the present or likely future ability to pay within 60 days of sentencing and while incarcerated, is qualitatively different from the finding that then-disabled Saeger would have the likely future ability to pay 29 months later, after he is released from confinement. Because this case is distinguishable from *Bertrand* and presents less compelling reasons for review, we decline to review the unpreserved claim of error. *See Blazina,* 174 Wn. App. at 911.[3]

2.    Order Imposing Discretionary LFOs

Saeger also argues the trial court's order requiring him to pay LFOs was erroneous and violated his right to equal protection. Once again, Saeger did not object below to the imposition of LFOs. In any event, we hold that this issue is not ripe for review.

A trial court's *finding of fact* in a judgment and sentence related to the ability to pay is a separate consideration from a court's *order* imposing legal financial obligations. *State v. Lundy,* 176 Wn. App. 96, 105 n.6, 308 P.3d 755 (2013); *Bertrand,* 165 Wn. App. at 404-05. Unlike a challenge to a *factual finding,* which is ripe for review upon entry, a challenge to an order imposing

---

[3] One exception in RAP 2.5(a)(3) allows review of unpreserved arguments involving manifest error affecting a constitutional right. However, Saeger does not argue that RAP 2.5(a)(3) applies here.

LFOs is not ripe until the State seeks to enforce the order. *Lundy*, 176 Wn. App. at 105 n.6, 108; *see also State v. Hathaway*, 161 Wn. App. 634, 651, 251 P.3d 253 (2011). Because a person is not an aggrieved party under RAP 3.1 until the State seeks to enforce the award of costs and it is then determined that the defendant has the ability to pay, appellate review is inappropriate until then. *State v. Mahone*, 98 Wn. App. 342, 349, 989 P.2d 583 (1999).

Here, nothing in the record indicates that the State has attempted to collect LFOs from Saeger. Accordingly, Saeger's challenge to the order requiring payment of LFOs is not yet ripe for review. *See Lundy*, 176 Wn. App. at 109. The appropriate time for Saeger to raise such a challenge is when the State seeks to collect on the court-ordered LFOs and when he is then unable to pay such obligation.

D.    SAG ISSUES

Saeger raises numerous additional errors in two separate SAGs. Saeger's SAG claims lack merit.

1.    Evidence Regarding Alleged Kidnapping

Saeger asserts that the trial court erred by refusing to admit evidence that Saeger had been investigated in connection with false allegations of the Gaspar-Guerreros' daughter that she had been kidnapped (ground one). We disagree.

We review a trial court's evidentiary rulings limiting the scope of cross-examination for an abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 20, 691 P.2d 929 (1984). "The right to confront and cross-examine adverse witnesses is guaranteed by both the federal and state constitutions." *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). But the right to cross-examine witnesses is not absolute, and it is limited by considerations of relevance. *Darden*, 145

Wn.2d at 621. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

Here, Saeger asked the trial court to allow him to present evidence that one of the Gaspar-Guerreros' children had run away from home but made it appear as though she was kidnapped from her bedroom, and that police officers obtained a warrant to search Saeger's trailer during the investigation. Saeger argued that this evidence impeached the Gaspar-Guerreros' credibility. The trial court excluded any evidence related to the incident because it did not demonstrate that the Gaspar-Guerreros made any false allegations.

The trial court did not abuse its discretion. Nothing about the incident is relevant to the case against Saeger or the Gaspar-Guerreros' credibility. There is no indication that the Gaspar-Guerreros made false allegations against Saeger or even that the Gaspar-Guerreros alleged that their daughter had been kidnapped. Although the police had obtained a search warrant for Saeger's trailer, it was as a result of their own suspicions based on the history between the parties and Saeger's proximity. In the absence of any evidence that the Gaspar-Guerreros made any false allegations, the incident could not be the basis for impeachment.

2.   Judicial Bias

Saeger asserts that the trial court was biased against him because (1) the trial court instructed him not to answer questions with "uh-hum" but did not instruct other witnesses not to answer questions with "uh-hum" (ground two) and (2) because the trial court found him guilty

14

even though there was "lack of rancor in the voices of the witnesses" (ground eight).[4] SAG at 1, 3. We disagree.

A party claiming bias or prejudice must support the claim with evidence of the trial court's actual or potential bias. *State v. Gamble*, 168 Wn.2d 161, 187-88, 225 P.3d 973 (2010). Saeger does not present any evidence that would indicate that instructing Saeger not to answer questions' with "uh-hum," even if the court did not instruct other witnesses, is evidence of actual or potential bias. And regarding the demeanor of the witnesses, the trial court in a bench trial has broad discretion to determine witness credibility. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) ("Credibility determinations are for the trier of fact and cannot be reviewed on appeal."). Accordingly, credibility determinations are not evidence supporting a claim of bias.

### 3. Evidence Regarding Saeger's Interactions with the Gaspar-Guerreros

Saeger contends that the trial court improperly allowed the State to present evidence of (1) Saeger's prior threats against the Gaspar-Guerreros (ground three) and (2) prior problems between Saeger and the Gaspar-Guerreros because Saeger had been playing loud music, drinking, and partying late at night (ground four). Specifically, Saeger alleges that the evidence was not relevant. We disagree.

We review the trial court's decision to admit evidence of the defendant's prior acts for an abuse of discretion. *State v. Binkin*, 79 Wn. App. 284, 289, 902 P.2d 673 (1995), *overruled on other grounds by State v. Kilgore*, 147 Wn.2d 288 (2002). When a defendant is charged with

---

[4] In its oral ruling, the trial court specifically stated that what it "found most interesting . . . was the lack of rancor in the voices of the witnesses. They didn't appear to be here out to get Mr. Saeger for something." RP at 88. It appears that Saeger may have misunderstood the trial court's use of the word rancor, which is not inconsistent with finding that the witnesses were credible.

felony harassment, evidence of a prior bad act or threat may be admitted to show that the victim's fear was reasonable. *See Binkin*, 79 Wn. App. at 292-93. Evidence of Saeger's prior acts towards the Gaspar-Guerreros was relevant to the reasonable fear element of felony harassment. *See State v. Ragin*, 94 Wn. App. 407, 411-12, 972 P.2d 519 (1999). Accordingly, this evidence was relevant and the trial court did not abuse its discretion in allowing this testimony.

Saeger did not object to the State's questions regarding Saeger's prior problems with the Gaspar-Guerreros. We do not review issues raised for the first time on appeal unless the alleged error is a manifest error affecting a constitutional right. RAP 2.5(a)(3). Saeger's allegations that the trial court erred by admitting irrelevant evidence is not a manifest error affecting a constitutional right. Accordingly, Saeger may not raise his challenge to the evidence regarding his past problems with the Gaspar-Guerreros for the first time on appeal.

4. Deputy Gray's Testimony

Saeger alleges that Deputy Gray made up his testimony that Saeger had been drinking alcohol on the night of the incident because Deputy Gray's report did not mention that Saeger had been drinking (ground five). However, the trial court in a bench trial has sole discretion to determine credibility and the weight of evidence, and we will not disturb these decisions on appeal. *Camarillo*, 115 Wn.2d at 71. Moreover, based on the trial court's findings of fact and conclusions of law, the trial court did not rely on Deputy Gray's testimony when making its determination of Saeger's guilt.

5. Prosecutor's Lack of Preparation

Saeger alleges that the State was unprepared because the prosecutor left some case law in his office (ground six) and forgot to bring the written findings of fact and conclusions of law to

16.

court (ground nine). At best, Saeger's allegations can be characterized as allegations of prosecutorial misconduct. We hold that these allegations cannot support a prosecutorial misconduct claim.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Saeger has failed to allege how he was prejudiced by the prosecutor leaving copies of case law in his office. And any prejudice caused by the prosecutor leaving the findings of fact and conclusions of law in his office was later cured by the trial court's supplemental findings of fact and conclusions of law.

6.   Sufficiency of the Evidence

Saeger challenges the sufficiency of the evidence against him, specifically citing the fact that the State failed to call as a witness Jose Castarina, the individual to whom Saeger was speaking when he made the threats at issue in this case (ground seven). We hold that the evidence was sufficient to convict Saeger.

When a defendant challenges the sufficiency of the evidence following a bench trial, our review "is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, ___ Wn.2d ___, 330 P.3d 182, 185 (2014). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted. *Homan*, 330 P.3d at 185. When raising a challenge to the sufficiency of the evidence, "the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *Homan*, 330 P.3d at 185.

17

To convict Saeger of felony harassment, the State must prove that Saeger, without lawful authority, knowingly threatened to kill the Gaspar-Guerreros and that the Gaspar-Guerreros reasonably believed that the threat to kill would be carried out. RCW 9A.46.020(1), .020(2)(b)(ii). The trial court found that Saeger threatened to blow up the Gaspar-Guerreros. The trial court also found that the Gaspar-Guerreros had a reasonable belief that the threat to kill would be carried out because of the history between them and Saeger. The Gaspar-Guerreros all testified at trial that they personally heard Saeger threaten to kill them by blowing them up. They also testified that they believed Saeger would carry out his threats kill them. Taking this testimony as true, substantial evidence supports the trial court's findings of fact. And the trial court's findings of fact support the trial court's conclusion that Saeger was guilty of felony harassment.

The trial court clearly found that the Gaspar-Guerreros' testimony was credible. The fact that Castarina did not testify at trial does not undermine the Gaspar-Guerreros' testimony or preclude the trial court from making findings of fact based on their testimony. Accordingly, Saeger's challenge to the sufficiency of the evidence supporting his conviction fails.

7. Saeger's Past Felony Convictions

Saeger alleges that the State improperly presented evidence of his prior felony convictions because they were not relevant to the case. However, the State presented Saeger's prior felony convictions during sentencing, not during the trial. The State properly presented Saeger's prior felony convictions for the purposes of calculating his offender score and standard sentencing range. Former RCW 9.94A.525, .530 (2011). Therefore, the State did not improperly present Saeger's prior felony convictions.

18

8.  Proof of Alcohol and Mental Health Treatment

In ground eleven, Saeger alleges:

> The court had proof that I compleated [sic] alcohal [sic] and mental health treatment when they found me guilty of a crime that I didn't commit when they assumed that I was drinking alcohal [sic]. I believe there has been an error on that as well.

SAG at 4. Although an issue in the SAG does not require citations to the record, argument, or authority, the statement must "inform the court of the nature and occurrence of alleged errors." RAP 10.10. Here, we cannot ascertain the nature of Saeger's alleged error. Accordingly, we do not address this alleged ground.

9.  Saeger's Right to Not Testify

Saeger alleges that defense counsel failed to inform him that he had the choice to not testify in the trial (ground twelve). Whether Saeger's defense counsel failed to inform him of his rights regarding testifying at trial relies on facts outside the record. We do not address claims based on facts outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Accordingly, we do not address Saeger's claim that his defense counsel never informed him he had the choice to not testify.

10.  No-Contact Order

In his second SAG, Saeger raises issues regarding the no-contact order imposed as a condition of his sentence. He argues that the no-contact order (1) violates his constitutional right to reside on his property (ground one) and (2) violates equal protection (ground two). We already have addressed the constitutionality of the no-contact order. Accordingly, we do not consider Saeger's SAG issues related to the no contact order any further.

E.  PRP ISSUES

In his PRP, which was consolidated with his initial appeal, Saeger asserts two additional claims.  First, Saeger contends that he was not read his rights by the arresting officers during the time of his arrest and therefore he "shouldn't even be locked up in confinement." PRP at 4. Second, he argues that he was told by his attorney to take the stand during trial, that he wasn't informed of his choice to testify or not, and that this constituted a violation of his Fifth Amendment rights.  We disagree with both claims.

Courts may grant relief in response to a timely PRP only if the petitioner is under unlawful restraint as defined in RAP 16.4(c).  A court will only grant relief if other available remedies, such as a direct appeal, are inadequate under the circumstances.  RAP 16.4(d).  A petitioner alleging a constitutional error must make the heightened showing by a preponderance of the evidence that the petitioner suffered actual prejudice.  *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).  Where a petitioner fails to make a prima facie showing of actual prejudice regarding an alleged constitutional error, dismissal is necessary.  *Yates*, 177 Wn.2d at 17.

The petitioner must state the "facts upon which the claim of unlawful restraint of petitioner is based and the evidence available to support the factual allegations." RAP 16.7(a)(2). Conclusory allegations are not sufficient.  *Yates*, 177 Wn.2d at 18.  If the petitioner's allegations rely on matters outside the factual record, the petitioner must show that he has admissible evidence to support his allegations.  *Yates*, 177 Wn.2d at 18.

1.    Alleged *Miranda*[5] Violation

Saeger contends that he was not "read [his] rights" by his arresting officer. PRP at 4. Beyond this assertion of error, Saeger fails to demonstrate – or even assert – how this failure prejudiced him at trial. "[B]ald assertions and conclusory allegations" are not sufficient to entitle petitioner to relief. *Yates*, 177 Wn.2d at 18; *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Factual allegations must be based on more than conjecture or inadmissible hearsay; the petitioner must provide admissible evidence in the form of affidavits and other corroborative evidence to support his allegation of error. *Yates*, 177 Wn.2d at 18. Saeger has failed to provide corroborating evidence, or evidence in the form of an affidavit to support his appeal.

Moreover, Saeger's assertion of error is in direct conflict with the evidence presented at trial. At trial, the arresting officer, Deputy Gray, testified that Saeger was advised of his rights. In light of this contradicting evidence, and Saeger's failure to support his assertion of error with affidavits or otherwise sufficiently admissible evidence, he has failed to meet his evidentiary burden for this issue.

2.    Alleged Violation of Saeger's Right to Not Testify

Saeger again raises a challenge to his conviction on the grounds that he was not informed of his right to not testify at trial. Brought either as an allegation of ineffective assistance of counsel or as a violation of his Fifth Amendment rights, Saeger fails to meet his evidentiary burden of proof.

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Saeger's allegation relies on evidence not found in the record – namely, conversations between Saeger and his attorney – and therefore, he must provide admissible evidence to support his allegation. *See Yates*, 177 Wn.2d at 18. But Saeger fails to provide any additional evidence to support this alleged error beyond what he already raised in his SAGs. Although a personal restrain petition is the appropriate venue for raising issues relying on facts outside the record, Saeger has failed to actually present additional evidence supporting his assertion that his defense attorney did not inform him of his right to refuse to testify. Therefore, Saeger's claim fails.

Because Saeger fails to meet his burden to show that he is entitled to relief, we deny his PRP.

We affirm Saeger's convictions and sentence and deny his personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

MELNICK, J.