[No. 78452-3.   En Banc.]
Argued March 13, 2007.   Decided April 19, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. ISMAEL ARMENDARIZ, *Petitioner*.

*Elaine L. Winters* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Scott F. Leist* and *James M. Whisman, Deputies,* for respondent.

¶1 J.M. JOHNSON, J. — The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, authorizes trial courts to impose crime-related prohibitions[1] as part of defendants' sentences.[2] We conclude that, as part of any felony sentence, such crime-related prohibitions may include orders prohibiting contact with victims or witnesses for the statutory maximum term. Thus, we hold that the trial court in the present case did not abuse its discretion in imposing a five-year no-contact order as part of petitioner Ismael Armendariz's sentence for third-degree assault.[3]

## FACTS AND PROCEDURAL HISTORY

¶2 In November 2003, the Seattle Municipal Court issued an order forbidding Armendariz from having contact

---

[1] " 'Crime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted . . . ." RCW 9.94A.030(13).

[2] RCW 9.94A.505(8).

[3] The statutory maximum term for third-degree assault is five years. *See* RCW 9A.36.031(2) (third-degree assault is a class C felony); RCW 9A.20.021(1)(c) (maximum five years confinement for class C felonies).

with Ms. Nonas-Truong through May 2004. However, in January 2004, Armendariz went to Nonas-Truong's residence. After arguing with Nonas-Truong, Armendariz left the premises. Later that same day, police responded to a 911 call reporting a possible domestic violence incident at the home. Upon arrival, Officer Chittenden went inside the residence to speak with Nonas-Truong and locked the door. While Officer Chittenden was inside, Armendariz returned and began yelling and banging on the front door. Officer Chittenden called for backup, but then opened the door before his backup arrived because he was afraid Armendariz would flee. Armendariz and Officer Chittenden ended up in a struggle, fighting on the floor until other officers arrived and helped take Armendariz into custody. Both Officer Chittenden and Armendariz suffered injuries for which they received medical treatment.

¶3 Armendariz was charged with third-degree assault and misdemeanor violation of a court order. Clerk's Papers (CP) at 1-2. A jury found Armendariz guilty as charged. CP at 30, 54. For the assault, Armendariz was sentenced to three months in jail followed by 12 months' community custody. CP at 34. The court also issued an order prohibiting Armendariz from contacting Nonas-Truong for five years. CP at 34. Additionally, the court imposed a condition of Armendariz's community custody prohibiting contact with Nonas-Truong. CP at 37. For violating a court order, the court gave Armendariz a 12-month suspended sentence on the condition that he serve five months in jail, have no contact with Nonas-Truong, and complete a domestic-violence treatment program. CP at 38-39.

¶4 Armendariz appealed his judgment and sentence to Division One of the Court of Appeals. *See State v. Armendariz*, noted at 131 Wn. App. 1036, 2006 Wash. App. LEXIS 185, at *4 (per curiam) (unpublished). Armendariz's claims included: (1) that he received ineffective assistance of counsel, (2) that his postarrest statement was erroneously admitted into evidence, (3) that the trial court exceeded its statutory authority in issuing a no-contact order regarding

Nonas-Truong as part of Armendariz's sentence for assaulting Officer Chittenden, and (4) that the trial court exceeded its authority in ordering Armendariz to participate in domestic violence treatment. *Id.* at *4, *6, *10, *12. The Court of Appeals rejected all of Armendariz's claims. *Id.* at *6, *9, *12, *13.

¶5 In his petition for review, Armendariz submitted four issues to this court. We granted review solely as to the trial court's authority to impose a no-contact order effective for a term equal to the statutory maximum for Armendariz's assault offense. *State v. Armendariz*, 158 Wn.2d 1018 (2006).

ANALYSIS

A. Standard of Review

■ ¶6 The imposition of crime-related prohibitions is generally reviewed for abuse of discretion. *State v. Ancira*, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001). However, the key question in this case is not whether the trial court abused its discretion in exercising admittedly existing authority, but rather whether the trial court had any authority under the SRA to impose the no-contact order at issue. Because this case hinges on a matter of statutory interpretation, de novo is the appropriate standard of review. *State v. J.P.*, 149 Wn.2d 444, 449, 69 P.3d 318 (2003).

■ ¶7 The goal of statutory interpretation is to discern and implement the legislature's intent. *Id.* at 450. In interpreting a statute, this court looks first to its plain language. *Id.* If the plain language of the statute is unambiguous, then this court's inquiry is at an end. *Id.* The statute is to be enforced in accordance with its plain meaning. *Id.*

■ ¶8 Where the plain language of the statute is subject to more than one reasonable interpretation, it is ambiguous. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001). This court may attempt to discern the legislative intent underlying an ambiguous statute from

its legislative history. *Id.* Likewise, this court may look to authoritative agency interpretations of disputed statutory language. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004).

## B. Trial Court Authority To Impose No-Contact Orders as Part of Defendants' Sentences

¶9 Prior to 2001, trial courts had express statutory authority to impose orders like the five-year no-contact order at issue here. Specifically, former RCW 9.94A.120(20) (1999) authorized the imposition of no-contact orders for a term equal to the statutory maximum for the defendant's crime.[4] *See also State v. Miniken*, 100 Wn. App. 925, 928, 999 P.2d 1289 (discussing trial court authority to impose no-contact orders under former RCW 9.94A.120(20)), *review denied*, 142 Wn.2d 1009 (2000). The statutory maximum term for third-degree assault is five years. *See* RCW 9A.36.031(2) (third-degree assault is a class C felony); RCW 9A.20.021(1)(c) (maximum five years' confinement for class C felonies). Thus, former RCW 9.94A.120(20) expressly authorized a five-year no-contact order as part of Armendariz's sentence for assault. However, former RCW 9.94A.120(20) was amended in 2000 as part of a general reorganization of the SRA. LAWS OF 2000, ch. 28. This provision was replaced by former RCW 9.94A.120(8) (2000) (now codified at RCW 9.94A.505(8)). *Id.*; LAWS OF 2001, ch. 10. The provision now reads: "As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter." RCW 9.94A.505(8).

¶10 A "crime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circum-

---

[4] Former RCW 9.94A.120(20) provided:

As a part of any sentence, the court may impose and enforce an order that relates directly to the circumstances of the crime for which the offender has been convicted, prohibiting the offender from having any contact with other specified individuals or a specific class of individuals for a period not to exceed the maximum allowable sentence for the crime, regardless of the expiration of the offender's term of community supervision or community placement.

stances of the crime for which the offender has been convicted." RCW 9.94A.030(13). It has already been determined that an order prohibiting Armendariz from contacting Nonas-Truong fits within the definition of "crime-related prohibition." *Armendariz,* 2006 Wash. App. LEXIS 185, at *11-12.

1.  *The plain language of the SRA authorizes trial courts to impose crime-related prohibitions, including no-contact orders, under the independent authority of RCW 9.94A.505(8)*

¶11 RCW 9.94A.505(8) is the key statutory provision in this case. Armendariz argues that RCW 9.94A.505(8) merely recognizes that authority to impose crime-related prohibitions may exist and requires trial courts to look to other provisions of the SRA for specific authorization to impose such orders. Armendariz contends that, in his particular case, the trial court authority to impose a no-contact order was limited to that provided by an SRA provision authorizing the imposition of conditions of community custody.[5] *See* RCW 9.94A.700(5). The State counters that RCW 9.94A.505(8) independently authorizes trial courts to impose crime-related prohibitions, including no-contact orders, as part of all defendants' sentences. Thus, the State argues, the trial court here had authority to impose a no-contact order for the maximum term of his assault conviction, even if extending in excess of Armendariz's community custody. We agree with the State.

¶12 First, the conclusion that RCW 9.94A.505(8) constitutes an independent grant of authority to impose crime-related prohibitions is supported by the overall structure of RCW 9.94A.505. This statute provides a general outline of how courts are to impose felony sentences under the SRA. Subsection (2) of this statute refers to trial court sentencing authority specifically related to matters of community cus-

---

[5] For ease of reference, the term "community custody" is used to refer to community custody, community placement, and community supervision.

tody. RCW 9.94A.505(2)(a)(ii)-(iv). Subsection (8) provides that "[a]s a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter." RCW 9.94A.505(8). This organizational structure supports the conclusion that trial court authority to impose crime-related prohibitions under subsection (8) exists separately from authority to impose conditions on community custody under subsection (2).

¶13 The plain language of RCW 9.94A.505(8), read together with the definitional provision RCW 9.94A.030(13), further supports the conclusion that trial courts possess authority to impose crime-related prohibitions under RCW 9.94A.505(8), independent of any other SRA provision. As noted above, RCW 9.94A.505(8) provides: "As a part of *any sentence*, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter." RCW 9.94A.505(8) (emphasis added). RCW 9.94A.030(13) defines a "crime-related prohibition" as "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted . . . ." RCW 9.94A.030(13). Together, these provisions plainly authorize trial courts, as part of any sentence, to impose orders prohibiting conduct directly relating to the circumstances of an offender's crime. Such orders reasonably include no-contact orders regarding witnesses like the order at issue in this case.

¶14 Several Court of Appeals decisions support the conclusion that RCW 9.94A.505(8) constitutes an independent grant of authority to impose crime-related prohibitions. *See State v. Acrey*, 135 Wn. App. 938, 146 P.3d 1215 (2006); *State v. Winston*, 135 Wn. App. 400, 144 P.3d 363 (2006); *State v. Warren*, 134 Wn. App. 44, 138 P.3d 1081 (2006). In *Acrey*, the Court of Appeals engaged in an express analysis of trial court authority under RCW 9.94A.505(8).

¶15 Focusing on the plain language of the statute, the *Acrey* court asserted that there is "no ambiguity in the phrase 'as part of any sentence.' 'Any' means 'one, no matter what one : EVERY . . . without restriction or limitation in

choice.' " 135 Wn. App. at 943 (alteration in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1993)). The court then asserted that the definition of "RCW 9.94A.030(13) controls imposition of sentence conditions." *Id.* Quoting RCW 9.94A.030(13) in full, the court concluded that "[c]rime-related conduct may be prohibited in any sentence, so long as the prohibition is directly related to the crime." *Id.* at 944. Regarding the "as provided in this chapter" language of RCW 9.94A.505(8), the *Acrey* court rejected the defendant's contention that this phrase meant that trial courts must look to other provisions of the SRA for authorization to impose crime-related prohibitions. Instead, the court concluded this phrase is meant to refer to an overarching distinction between crime-related prohibitions and affirmative conduct conditions present throughout the SRA. *Id.* at 944-45.[6] In sum, the *Acrey* court held that RCW 9.94A.505(8) constitutes an independent grant of authority to impose crime-related prohibitions. This is a reasonable reading of the SRA's plain language.[7]

¶16 In accordance with the structure and plain language of the SRA, as well as the Court of Appeals decision in *Acrey*, we conclude that RCW 9.94A.505(8) constitutes an independent source of trial court authority to impose no-contact orders like the one at issue in this case. Our conclusion is confirmed by the SRA's legislative history, as well as its interpretation by the Sentencing Guidelines Commission (SGC).

---

[6] According to the *Acrey* court, the legislature sought to draw "a sharp distinction between prohibitions on the one hand and affirmative conduct conditions on the other." 135 Wn. App. at 944. This distinction "reflects the legislature's retreat from rehabilitation in favor of determinate punishment." *Id.* at 945. Moreover, this distinction was the central issue in previous cases considering the propriety of crime-related prohibitions. *Id.* (quoting *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)). The distinction is highlighted in the plain language of RCW 9.94A.030(13).

[7] Armendariz argues that this interpretation is not reasonable because there is no enforcement mechanism for orders imposed solely under RCW 9.94A.505(8). However, as the Court of Appeals concluded in *Acrey*, the SRA does contain a mechanism for trial court enforcement of crime-related prohibitions unrelated to community custody. *Acrey*, 135 Wn. App. at 945-46 (discussing court's ability to enforce such orders under RCW 9.94A.634(1)).

2. *Legislative history and agency interpretation confirm that RCW 9.94A.505(8) independently authorizes the imposition of crime-related prohibitions, including no-contact orders, as part of defendants' sentences*

¶17 As noted above, until 2001, the SRA expressly provided for the imposition of a no-contact order as part of a defendant's sentence "not to exceed the maximum allowable sentence for the crime, regardless of the expiration of the offender's term of community supervision or community placement." Former RCW 9.94A.120(20). In 2000, this specific language was eliminated and replaced by the more general language of RCW 9.94A.505(8). LAWS OF 2000, ch. 28. The State cites to the legislative history surrounding the amendments of 2000 as evidence of the fact that the legislature intended for RCW 9.94A.505(8) to provide trial courts continuing authorization to impose crime-related prohibitions, including no-contact orders, unrelated to community custody. Armendariz contends that, regardless of the legislature's intent, the 2000 amendments to the SRA eliminated trial court authority to impose no-contact orders like the one at issue in this case. Again, we agree with the State.

¶18 In amending the SRA in 2000, the legislature explicitly stated that it did not intend to make any substantive changes to the SRA. The act in question, Laws of 2000, ch. 28, was described as "AN ACT Relating to reorganization of, and technical, clarifying, nonsubstantive amendments to, community supervision and sentencing provisions . . . ." Moreover, the legislature explicitly described its intent in enacting this law as follows:

> The sentencing reform act has been amended many times since its enactment in 1981. While each amendment promoted a valid public purpose, some sections of the act have become unduly lengthy and repetitive. The legislature finds it appropriate to adopt clarifying amendments to make the act easier to use and understand.

The legislature does not intend chapter 28, Laws of 2000 to make, and no provision of chapter 28, Laws of 2000 shall be construed as making, a substantive change in the sentencing reform act.

RCW 9.94A.015; *see also* S.B. REP. on S.B. 6223, 56th Leg., Reg. Sess., at 1 (Wash. 2000) (describing bill as "[r]eorganizing sentencing provisions"); H.B. REP. on S.B. 6223, 56th Leg., Reg. Sess., at 1 (Wash. 2000) (summarizing bill as follows: "Reorganizes the sentencing provisions in statute for clarity. Makes no changes to current law.").

¶19 Consistent with the legislature's intent, we conclude that the elimination of the specific language regarding no-contact orders in former RCW 9.94A.120(20) did not eliminate the authority provided thereby. Instead, the change in language should be viewed as intended, as legislation to eliminate "unduly lengthy and repetitive" provisions of the SRA. RCW 9.94A.015.

¶20 As noted above, former RCW 9.94A.120(20) provided:

*As part of any sentence, the court may impose and enforce an order that relates directly to the circumstances of the crime for which the offender has been convicted,* prohibiting the offender from having any contact with other specified individuals or a specific class of individuals for a period not to exceed the maximum allowable sentence for the crime, regardless of the expiration of the offender's term of community supervision or community placement.

(Emphasis added.) Together, RCW 9.94A.505(8) and RCW 9.94A.030(13) now provide: "As a part of any sentence, the court may impose and enforce crime-related prohibitions," which are orders "prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." This broader language encompasses the more specific authority to "prohibit[ ] the offender from having any contact with other specified individuals or a specific class of individuals." Former RCW 9.94A.120(20); *see Armendariz*, 2006 Wash. App. LEXIS 185, at *11-12

(holding order prohibiting Armendariz from contacting Nonas-Truong constituted valid "crime-related prohibition" as defined by RCW 9.94A.030(13)). Thus, the change in language from former RCW 9.94A.120(20) to RCW 9.94A-.505(8) may be viewed simply as an attempt to cure the lengthiness and repetitiveness problems that the legislature identified. Accordingly, we hold that trial courts retain the same substantive powers under the reformulated language of RCW 9.94A.505(8) as was clearly present under former RCW 9.94A.120(20).

¶21 Further confirmation of our conclusion is found in the interpretation of the SRA by the SGC. The SGC is charged with implementing, monitoring, and improving the SRA. RCW 9.94A.850-.865. This court has previously cited explanations of the SGC in interpreting the SRA. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 250-51, 955 P.2d 798 (1998) (citing *State v. Ha'mim*, 132 Wn.2d 834, 844, 940 P.2d 633 (1997); *In re Pers. Restraint of Long*, 117 Wn.2d 292, 301, 815 P.2d 257 (1991)), *superseded on other grounds by statute as stated in State v. DeSantiago*, 149 Wn.2d 402, 68 P.3d 1065 (2003).

¶22 The SGC's 2006 sentencing manual provides, in relevant part:

> A court may prohibit an offender from contacting with specified individuals or a specific class of individuals for a period not to exceed the maximum allowable sentence for the crime, regardless of the expiration of the community supervision or community placement term. The order prohibiting contact must relate directly to the circumstances of the crime of conviction.

WASH. SENTENCING GUIDELINES COMM'N, ADULT SENTENCING MANUAL I-42 (2006) (citing RCW 9.94A.505(8)).

¶23 The SGC's sentencing manual has contained virtually identical language since before 2000. The only significant change is that prior to the legislature's 2000 amendments, the SGC cited to former RCW 9.94A.120(20) as the relevant statutory authority, while from 2001 forward, the

SGC cited to RCW 9.94A.505(8).[8] Armendariz suggests that this use of the same language demonstrates that the SGC's manual contains incorrect information because it fails to take into account the changes in trial court authority wrought by the 2000 amendments. However, contrary to Armendariz's suggestions, this consistency in language actually supports the State's position. Specifically, it indicates that the SGC, aware of the technical changes made in 2000 as evidenced by the change of statutory citation, concluded that the new language did not substantively affect trial court authority to impose no-contact orders as part of defendants' sentences. This is a reasonable interpretation by an agency with expertise on which this court has previously relied.

¶24 Overall, the State presents a reasonable reading of the current statutory language, which comports with the legislature's clear statement of intent to effect only non-substantive changes in amending the SRA in 2000. Therefore, we reject Armendariz's contention that by eliminating one specific reference to no-contact orders in former RCW 9.94A.120(20), the legislature divested trial courts of the authority to impose such orders. Instead, we interpret RCW 9.94A.505(8) as continuing to provide trial courts with independent authority to impose crime-related prohibitions, including no-contact orders.

3. *The maximum term for crime-related prohibitions imposed under RCW 9.94A.505(8) is the statutory maximum for defendants' crimes*

¶25 No provision of the SRA directly addresses the maximum time period for which a trial court may impose a no-contact order, or any crime-related prohibition, under RCW 9.94A.505(8). Armendariz argues that the effective term of the order in his case must be limited to the term of his community custody. The State contends that such an

---

[8] The SGC's manuals are available at http://www.sgc.wa.gov/Informational/Publications.htm (last visited May 3, 2007).

order may be effective for the statutory maximum term for Armendariz's crime. Again, we agree with the State.

¶26 As explained above, trial court authority to impose crime-related prohibitions, including no-contact orders, under RCW 9.94A.505(8), is independent of authority to impose conditions of community custody. This being so, it would be illogical to limit the effectiveness of orders imposed under RCW 9.94A.505(8) to a defendant's community custody term. In contrast, a time limit concomitant with the statutory maximum for the defendant's crime is logical, as well as supported by the plain language of the SRA, its legislative history, and its interpretation by the SGC.

¶27 In terms of plain language, RCW 9.94A.505(5) states that "[e]xcept as provided under RCW 9.94A.750(4) and 9.94A.753(4), a court may not impose a sentence providing for a term of confinement or community supervision, community placement, or community custody which exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW." In other words, except in limited circumstances not relevant here,[9] the terms of a defendant's sentence may not exceed the statutory maximum for his crime. Crime-related prohibitions are not specifically mentioned. However, given that no more specific guidance is provided, it is reasonable to subject these conditions to the same time limit as applies to all other aspects of a defendant's sentence. This conclusion is also supported by the SRA's legislative history and its interpretation by the SGC.

¶28 As noted above, former RCW 9.94A.120(20) explicitly provided that no-contact orders like the one at issue in the present case could be made effective "for a period not to exceed the maximum allowable sentence for the crime." While the legislature's technical corrections in 2000 resulted in the elimination of this particular language, the legislature expressly stated its intent not to effect any substantive changes by its actions. RCW 9.94A.015. Thus,

---

[9] RCW 9.94A.750(4) and RCW 9.94A.753(4) deal with restitution orders and provide that offenders subject to such orders will be subject to the court's jurisdiction for a term of 10 years.

it accords with the legislature's intent to conclude that no-contact orders imposed under RCW 9.94A.505(8) may be made effective for a period up to the statutory maximum for the defendant's crime. This conclusion is similarly supported by the SGC's interpretation of the SRA. *See* WASH. SENTENCING GUIDELINES COMM'N, *supra*, at I-42 (stating that no-contact orders may be imposed, under RCW 9.94A.505(8), for a period up to "the maximum allowable sentence" for defendants' crimes). In sum, the plain language of the SRA, its legislative history, and agency interpretation support the conclusion that the statutory maximum for the defendant's crime is the appropriate time limit for no-contact orders imposed under RCW 9.94A.505(8).

## CONCLUSION

¶29 The plain language of the SRA supports the conclusion that trial courts may impose crime-related prohibitions, including no-contact orders, for a term of the maximum sentence to a crime. The SRA's legislative history and its interpretation by the SGC further support the conclusion that RCW 9.94A.505(8) is intended to provide trial courts with authority to impose such orders. Moreover, these same sources support the conclusion that such orders may last for the statutory maximum for the defendant's crime. Thus, we hold that the trial court in the present case did not exceed its authority under the SRA in imposing a five-year no-contact order as part of Armendariz's sentence for third-degree assault.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.