IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33599-2-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 33608-5-III) |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN R. BRONOWSKI, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |
| In re the Matter of the Personal Restraint | ) | |
| of | ) | |
| | ) | |
| RYAN ROBERT BRONOWSKI, | ) | |
| | ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, A.C.J. — Ryan Bronowski appeals his convictions for theft

of a motor vehicle, second degree possession of stolen property, and three counts of

second degree vehicle prowling. He argues (1) he received ineffective assistance of

counsel because defense counsel failed to request a jury instruction for a lesser included

offense to theft of a motor vehicle, (2) his right to a unanimous jury verdict was violated

when the State failed to elect between multiple acts that could result in a conviction for

second degree possession of stolen property, and (3) the trial court abused its discretion when it imposed a five-year no-contact order to protect a victim of only a gross misdemeanor. Mr. Bronowski also filed a personal restraint petition alleging sexual misconduct by defense counsel. We agree the trial court abused its discretion when it imposed a five-year no-contact order to protect a person who was neither a witness to nor a victim of a class C felony. In all other respects, we affirm.

## FACTS

On the morning of March 1, 2015, Alicia Aldendorf entered her car and discovered that someone had rummaged through her glove box and scattered her belongings around the front seat of her vehicle. She determined that her Banner Bank debit card, checkbook, and some coffee cards had been removed from her vehicle. No fraudulent charges were ever made using her Banner Bank debit card.

Similarly, James Adams awoke early that morning to the sound of his dogs barking. A few days later, Mr. Adams discovered that someone had broken into one of his cars. The delay in his discovery was because he seldom used that car. Mr. Adams determined that his iPod, compact disc visor, cords, a glass breaking tool, a pair of sunglasses, and an access card for parking were missing. That same morning, Lonnie O'Bannan noticed his 1999 Dodge Neon being backed out of his driveway by an

2

unidentified person. Mr. O'Bannan immediately called the police to report his car had been stolen.

Liberty Lake Police Officer Mike Bogenreif was on patrol the morning of these crimes. He learned from dispatch that a car theft had just occurred and received a description of Mr. O'Bannan's stolen car. Minutes later, Officer Bogenreif saw Mr. O'Bannan's Dodge Neon on the side of the road. As Officer Bogenreif approached, he saw a man exit from the driver's door. Officer Bogenreif ordered the man to the ground, but the man fled into a nearby yard. Officer Bogenreif noticed someone still in the car, and chose to detain that person rather than chase the man.

About 10 minutes later, Spokane County Sheriff's Deputy Thomas Edelbrock arrived to assist Officer Bogenreif. The officers searched the yard where the man had fled. The officers located the man, later identified as Ryan Bronowski, hiding between an outbuilding and a fence. The officers also discovered a black backpack belonging to Mr. Bronowski. In the backpack and in the Neon, the officers found a glove, keys, and a small amount of change, all of which Mr. O'Bannan later identified as his property. The officers also recovered Ms. Aldendorf's checkbook and Banner Bank debit card, along with Mr. Adams's iPod, glass breaking tool, and parking access card.

The State charged Mr. Bronowski with theft of a motor vehicle, second degree

3

possession of stolen property, and three counts of second degree vehicle prowling. A jury

found him guilty of all charges. The trial court sentenced Mr. Bronowski to 57 months

for his theft of a motor vehicle conviction, and ordered sentences on the lesser offenses to

run concurrently. The trial court also imposed five-year no-contact orders protecting Mr.

O'Bannan, Ms. Aldendorf, and Mr. Adams.

Mr. Bronowski appeals. He subsequently filed a personal restraint petition. We

consolidated the personal restraint petition with this appeal.

## ANALYSIS

A. *Challenge to theft of a motor vehicle conviction*

Mr. Bronowski claims he was denied effective assistance of counsel because his

attorney failed to request a jury instruction on second degree taking a motor vehicle,

which he asserts is a lesser included offense of theft of a motor vehicle. Because we can

resolve this claim by addressing his ineffective assistance argument, we decline to address

his assertion that the former is a lesser included offense of the latter.

An ineffective assistance of counsel claim may be raised for the first time on

appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Ineffective assistance

of counsel claims are reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d

916 (2009). To demonstrate ineffective assistance of counsel, a defendant must make two

showings: (1) that counsel's performance was deficient, and (2) that counsel's errors were serious enough to prejudice the defendant. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Under the deficiency prong, counsel's conduct is not considered deficient if it can be characterized as legitimate trial strategy. *Kyllo*, 166 Wn.2d at 863. When reviewing an ineffective assistance of counsel claim, there is a strong presumption that counsel's conduct fell within a wide range of a reasonable professional assistance. *Strickland*, 466 U.S. at 689. A criminal defendant can rebut this presumption by showing that counsel's performance cannot be explained by any legitimate trial strategy. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reichenback*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).[1]

Under the prejudice prong, a defendant must show "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings

---

[1] In his brief, Mr. Bronowski refers to a three-part test from *State v. Breitung*, 155 Wn. App. 606, 615, 230 P.3d 614 (2010), *aff'd*, 173 Wn.2d 393, 267 P.3d 1012 (2011) used to analyze the deficiency prong. This test examines (1) the difference in maximum penalties between the greater and lesser offenses, (2) whether defense's theory of the case is the same for both greater and lesser offenses, and (3) the overall risk to the defendant given the totality of developments at trial. *Id.* (quoting *State v. Grier*, 150 Wn. App. 619, 640-41, 208 P.3d 1221 (2009), *vacated by*, 171 Wn.2d 17). This test has been explicitly

would have been different." *Kyllo*, 166 Wn.2d at 862. When assessing this prong, the reviewing court should presume the jury followed the law and did not engage in an arbitrary analysis or jury nullification. *Grier*, 171 Wn.2d at 34 (quoting *Strickland*, 466 U.S. at 694-95). At all times, and under both prongs, the reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

In *Grier*, the defendant was charged with second degree murder. 171 Wn.2d at 20. At trial, defense counsel requested but then withdrew jury instructions for lesser included charges to second degree murder. *Id.* at 26-28. In closing arguments, defense counsel argued the State had not met its burden of proof. *Id.* at 27. Specifically, the State never proved the defendant was armed, had fired the fatal shot, or had any guns in her possession. *Id.* at 27-28. Defense counsel argued in the alternative that defendant's actions were in self-defense because the victim had physically assaulted and threatened the defendant's teenage son, and was attempting to steal the defendant's property. *Id.* at 28. The *Grier* court carefully reviewed the facts and noted that the facts supported defense counsel's argument. *Id.* at 42-43. The *Grier* court stated:

---

rejected by the Washington Supreme Court. *Grier*, 171 Wn.2d at 32.

6

> Grier and her defense counsel reasonably could have believed that an all or
> nothing strategy was the best approach to achieve an outright acquittal.
> That this strategy ultimately proved unsuccessful is immaterial to an
> assessment of defense counsel's initial calculus; hindsight has no place in
> an ineffective assistance analysis.

*Id.* at 43 (internal citations omitted). The *Grier* court held that because an all-or-nothing

approach was a reasonable trial tactic, counsel was not deficient for failing to request a

lesser included instruction. *Id.*

Here, defense counsel's theory of the case was that the State had not met its burden

of proof. Deputy Edelbrock testified he never saw Mr. Bronowski in control of the Neon.

Officer Bogenreif testified he never saw anyone driving the Neon, or sitting in the

driver's seat of the Neon. Mr. O'Bannan was unable to identify the person he observed

taking his Neon. Defense counsel made the following arguments to the jury, "The State

had not proven anything," "[N]obody saw Mr. Bronowski in the driver's seat," "There's

no showing that Mr. Bronowski was ever in control of [the Neon]," and, "[T]here's no

indication [Mr. Bronowski] exerted any unauthorized control over [the Neon]."

Report of Proceedings at 199, 202-03. Defense counsel's all-or-nothing trial strategy here

is very similar to the one used by defense counsel in *Grier*. 171 Wn.2d at 42-44. The fact

the strategy proved unsuccessful is irrelevant because "hindsight has no place in an

ineffective assistance analysis." *Id.* at 43. Defense counsel's performance here was not

7

deficient.

B.     *Challenge to second degree possession of stolen property conviction*

Mr. Bronowski argues his conviction for second degree possession of stolen

property should be reversed because the State failed to elect between multiple acts, and

this failure deprived him of his right to a unanimous jury verdict.

The Washington Constitution gives criminal defendants the right to a unanimous

jury verdict. CONST. art. I, § 21. In cases where the State presents evidence of multiple

criminal acts and any one of these acts could constitute the crime charged, the jury must

unanimously agree on the same act that constitutes the crime in order to convict the

defendant. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). To ensure jury

unanimity in "multiple acts" cases, either the State must elect the particular criminal act

on which it will rely for conviction, or the trial court must instruct the jury that all of them

must agree that the same underlying criminal act has been proved beyond a reasonable

doubt. *Id.* Constitutional error occurs if there is no election and no unanimity instruction

is given. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). The error

stems from the possibility that some jurors may have relied on one act as the basis for

convicting the defendant and other jurors may have relied on a different act, resulting in a

lack of unanimity on all of the elements necessary for a valid conviction. *State v.*

*Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988).

Here, Mr. Bronowski asserts the State relied on both Lila Zander's Visa card and Ms. Aldendorf's Banner Bank debit card to secure a conviction for second degree possession of stolen property. Deputy Edelbrock, while testifying about State's exhibit 23, misidentified the Banner Bank debit card as belonging to Ms. Zander. In her testimony, Ms. Zander never mentioned a Visa card had been stolen from her. Ms. Aldendorf correctly identified State's exhibit 23 as her Banner Bank debit card. It is clear from the photograph of the card that it belongs to Ms. Aldendorf. During closing arguments, the State addressed this possible confusion when it told the jurors that while Deputy Edelbrock may not have been able to read Ms. Aldendorf's name on the Banner Bank debit card, Ms. Aldendorf was able to identify her card. The State clearly argued Ms. Aldendorf's Banner Bank debit card was the only card in evidence. Mr. Bronowski's assertions the State was required to elect between Ms. Zander's card and Ms. Aldendorf's card, or the trial court had to provide a unanimity instruction, are without merit. There was only one card admitted into evidence.

Mr. Bronowski also asserts the State failed to elect between Ms. Aldendorf's Banner Bank debit card and her checkbook. However, the only discussion of the checkbook occurred during cross-examination of Deputy Edelbrock by defense counsel.

9

The State never put forth the theory that the checkbook was an access device under

RCW 9A.56.010(1). Also, the jury instruction defined "access device" to exclude "a

transfer originated solely by paper instrument." Clerk's Papers at 73. The jury therefore

could not have convicted Mr. Bronowski of second degree possession of stolen property

based on the checkbook. Therefore, the State did not need to elect between the

checkbook and the Banner Bank card to obtain the conviction.

C.    *Five-year no-contact order protecting victim of gross misdemeanor*

Mr. Bronowski argues the trial court erred by ordering him not to have any contact

with Mr. Adams for five years. He argues the five-year term of the order is improper

because Mr. Adams was a victim of only a gross misdemeanor, punishable by up to 364

days in jail.

A sentencing court has discretion to impose crime-related prohibitions.

Former RCW 9.94A.505(8) (2010). Crime-related prohibitions include no-contact orders.

*State v. Armendariz*, 160 Wn.2d 106, 112, 156 P.3d 201 (2007). The imposition of crime-

related prohibitions is reviewed for abuse of discretion. *Id.* at 110. A court abuses its

discretion when its decision is manifestly unreasonable or has an untenable basis. *State v.*

*Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997).

In *State v. Warren*, the defendant was convicted of one count of first degree child

10

molestation and three counts of second degree rape. 165 Wn.2d 17, 23, 195 P.3d 940

(2008). First degree child molestation is a class A felony, punishable by up to life in

prison. RCW 9A.44.083(2); RCW 9A.20.021(1)(a). The trial court imposed lifetime no-

contact orders protecting the two child victims *and* their mother. *Warren*, 165 Wn.2d at

32. The *Warren* court held that no-contact orders entered as a sentencing condition are

permissible to protect even a person who is not a direct victim, if protecting the person

directly relates to the crime. *Id.* The court noted it was a "close question" whether the

no-contact order directly related to the crime. *Id.* at 33. The court nevertheless

determined that protecting the mother was directly related to the crime because she was

the mother of the victims, and because she went against the defendant's wishes and

assisted the State in obtaining a conviction for the class A felony. *Id.* at 34.

The State argues the trial court did not abuse its discretion in this case when it

entered the five-year no-contact order because Mr. Adams was a victim and because he

testified at trial. We disagree with the State's argument. Although Mr. Adams was a

victim, he was not a victim of a class C felony. Further, although Mr. Adams was a

witness, his testimony did not relate to Mr. Bronowski's conviction for any class C

felony. Because protecting Mr. Adams does not directly relate to the crime of theft of a

motor vehicle, we conclude the trial court abused its discretion in entering the five-year

11

no-contact order.[2] We, therefore, remand for the trial court to either vacate or amend the subject order to a term of no longer than 364 days.

D.    *Personal restraint petition*

When a petitioner alleges that a nonconstitutional error has occurred, the petitioner must show "'a fundamental defect resulting in a complete miscarriage of justice.'" *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013) (quoting *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007)). A personal restraint petition will be dismissed when a petitioner fails to make a prima facie showing of actual prejudice. *Id.* A petitioner's bald assertions and conclusory allegations are insufficient to justify relief. *Id.* at 18 (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992)).

---

[2] The dissent asserts that our holding directly contradicts *Armendariz*. Dissent at 1-2. There, the defendant argued the no-contact order could not exceed the term of his community service. *Armendariz*, 160 Wn.2d at 118. The *Armendariz* court held that "the statutory maximum for the defendant's crime is the appropriate time limit for no-contact orders imposed under [former] RCW 9.94A.505(8)." *Armendariz*, 160 Wn.2d at 120. The *Armendariz* court did not address the issue presented here, whether the no-contact order must directly relate to the specific crime involving the witness.

The *Warren* court most closely addressed the issue presented here when it held that a sentencing court may impose a no-contact order protecting a witness if protecting the witness directly relates to the crime. *Warren*, 165 Wn.2d at 32. Because protecting Mr. Adams directly relates only to the gross misdemeanor, the no-contact order may be no

No. 33599-2-III; No. 33608-5-III
*State v. Bronowski*

Here, Mr. Bronowski asserts he should be granted a new trial because defense counsel committed sexual misconduct during trial. He has no evidence other than his own statement. Assuming the truth of his statement, he still fails to show deficient performance by counsel. Because Mr. Bronowski received a fair trial and effective assistance, he has failed to show a fundamental defect resulting in a complete miscarriage of justice. Mr. Bronowski has failed to meet his burden of proof. We, therefore, dismiss his personal restraint petition.

Affirmed in part and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

I CONCUR:

_____
Siddoway, J.

_____

longer than 364 days.

13

Nos. 33599-2-III; 33608-5-III

KORSMO, J. (dissenting in part) — This court should not be addressing the propriety of a no-contact order that was not challenged in the trial court. The ultimate question in resolving challenges to a sentencing condition is whether the trial court abused its discretion. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A trial court only abuses its discretion when it acts on untenable grounds or for untenable reasons; applying an incorrect standard of law represents an example of an untenable reason. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). While occasionally a sentencing condition challenge presents solely a question of law, in most other instances, though, the propriety of a sentencing condition depends on the trial judge's rationale for the condition. Where there was no objection to the condition at sentencing, there simply is no record that would allow the defendant to raise this argument for the first time on appeal because the trial court's reasoning process is not set out. That is the situation here and, accordingly, I would not address this argument. To the extent that we need to reach the issue, I would hold there is no "victim of crime" limitation on the trial court's authority to order no contact with the witnesses against the defendant. In addition, the majority's ruling here is squarely in conflict with *State v. Armendariz*, 160 Wn.2d 106,

156 P.3d 201 (2007), and misreads *Warren*. Therefore, I dissent solely from that portion of the majority opinion.

The general rule is that Washington courts will not entertain issues that are raised initially in the appellate courts. RAP 2.5(a). Even when the issue presented involves a question of manifest constitutional error, one of the limited exceptions[1] to the general rule, the issue cannot be considered unless the record adequately presents the issue. *State v. McFarland*, 127 Wn.2d 322, 333-334, 899 P.2d 1251 (1995). The Washington Supreme Court also has created a common law "sentencing error" exception to RAP 2.5(a). *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999); *State v. McCorkle*, 137 Wn.2d 490, 973 P.2d 461 (1999). Although the contours of that exception are not very clear, it appears that the sentencing error exception is similarly limited by the *McFarland* doctrine. Most sentencing error claims involve legal questions rather than factual questions. *E.g., Ford*, 137 Wn.2d at 475 (classification of prior out-of-state conviction). Appellate courts can consider these claims because the lack of a record typically does not impede resolution of the issue. However, in situations where the alleged sentencing error involves trial court discretion, the claim will not be entertained on appeal. *E.g., State v. Nitsch*, 100 Wn. App. 512, 523-525, 997 P.2d 1000 (2000) (same criminal conduct claim cannot be raised).

---

[1] *See* RAP 2.5(a)(3).

2

I would apply the *McFarland* rule to alleged sentencing errors when resolution of the question requires resolution of factual matters or an understanding of the judge's reasoning. This claim presents just such a problem. There is no basis for reversing the trial judge here without first giving him the opportunity to explain himself. Approaching the problem in any other manner simply encourages defendants to not raise questions in the trial court, especially where, as here, it is of no practical consequence to the defendant. He appears to have no relationship to James Adams and is prohibited from contacting all other witnesses for five years. The ability to contact Mr. Adams sooner than the other witnesses is of no value to him.

Therefore, I would prefer not to even address this issue. Since we do not know why the judge exercised his discretion in this manner, we should not find an abuse of discretion.

However, in addition to disagreeing with the majority's creation of another new exception to RAP 2.5(a), the ruling is also wrong on the law and on the facts. It is quite apparent that the trial court *could* prohibit Mr. Bronowski from contacting Mr. Adams for the full five years it has authority to limit the defendant's behavior. Both of the Washington Supreme Court cases cited by the majority do not support its reasoning. Indeed, *Armendariz* squarely conflicts with the result here.

The defendant in *Armendariz* was convicted of both a gross misdemeanor of violating a no-contact order against a woman and a class C felony of assault in the third degree against an officer. 160 Wn.2d at 109. The trial court prohibited the defendant

3

from contacting the woman for a five-year period as a crime-related prohibition for the assault conviction.[2] *Id.* The sole question on appeal was whether the trial court had the authority to do so.[3] *Id.* at 110. The Supreme Court unanimously concluded that the trial court did have the authority to do so. *Id.* at 118. The court was authorized to impose the crime-related prohibition for the period of the statutory maximum sentence. *Id.* at 120.

Thus, the result sanctioned by the majority in this case is the exact opposite of that allowed in *Armendariz*. That case simply does not support the majority's reasoning.

Neither does *Warren*. There the defendant was convicted of sexually assaulting two of his wife's children. The wife testified at trial. *Warren*, 165 Wn.2d at 31-32. The trial court issued lifetime no-contact orders protecting the wife and the two children. *Id.* at 31. While our court thought it was a "close question" whether issuing a lifetime no-contact order was appropriate since the wife was *not a victim of the crimes*, the court concluded that the trial judge did not abuse his discretion. *Id.* at 32-33. The court then turned to the issue of whether applying the lifetime spousal contact ban violated the

---

[2] The trial court also ordered the defendant to have no contact with the victim for the misdemeanor conviction. *Armendariz*, 160 Wn.2d at 109. No duration for that order was indicated in the opinion.

[3] The court did not grant review on whether the no-contact order for the female victim was proper as part of the assault sentence. *Id.* at 109-110. Thus, the question presented by Mr. Bronowski is technically not foreclosed by *Armendariz*. Still, it is unimaginable that the court could have reached the result it did if it believed the argument was viable.

fundamental right to marriage. *Id.* at 34. The court concluded that the protection of the wife and her children was a compelling state interest justifying the lifetime ban. *Id.*

Similarly here, the trial judge did not abuse his discretion in applying the five year no-contact orders to all witnesses. If Mr. Warren could be prohibited from contacting his wife for the rest of his life merely because she was a witness against him, certainly Mr. Adams can be protected for the five years Mr. Bronowski is under the control of the trial court. The majority cites no relevant authority for its view that a victim can only be protected for the length of time related to the victim's charged count while the other witnesses are entitled to the maximum protection accorded by the other charges. The no-contact orders are not charge specific. Instead, the proper focus here should be on the trial court's authority over the offender. If the defendant is subject to a five year maximum penalty, then the court has the discretion to protect all witnesses for that time period. No authority compels the judge to parse the testimony, decide which count it relates to, and then issue no-contact orders consistent with its determination.

But, even if the rule were as the majority states, the court's exercise of discretion here still should be upheld. All of the charges were tried together and the evidence relating to Mr. Adams' count necessarily was considered in the other counts. At the time of his arrest with the stolen car, Mr. Bronowski was in possession of other personal property stolen from Mr. Adams, Alicia Aldendorf, and the owner of the car, Lonnie O'Bannan. The property taken from Adams and Aldendorf undercut the defendant's

5

claim that he had permission to use the stolen O'Bannan vehicle and helped prove the vehicle theft count. In addition to showing the intent and possession aspects of the vehicle theft count, that same property served to identify the defendant as the perpetrator of the other vehicle break-ins. In short, Mr. Adams served as a witness to all counts even though he was a charged victim in only one of them.

For all of these reasons, I dissent from the majority's ruling on the no-contact order relating to Mr. Adams.

_____
Korsmo, J.