IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 75953-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LELAND DEAN RUSSELL, JR., | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: October 8, 2018 |

ANDRUS, J. — Leland Dean Russell was convicted of two counts of first degree murder and one count of second degree assault. Russell argues the trial court erred in instructing the jury on how to deliberate to reach a valid unanimous verdict and the trial court exceeded the authorized term for the assault-related no-contact order. We affirm Russell's convictions. We remand, however, for the trial court to correct the scrivener's error in the no-contact order as it pertains to the assault victim.

## FACTS

The State charged Russell with two counts of first degree murder, with premeditated intent, and one count of second degree assault. The State alleged that on August 20, 2014, Russell engaged in verbal confrontations with several people at a gas station before shooting Carlos E. Gonzales and David

No. 75953-1-I/2

Christianson multiple times at close range. The State further alleged that earlier that morning, Russell had chased a motorist, Heather McKenzie, while wielding a gun. He was also accused of being armed with a handgun on all three counts.

Russell's trial occurred between July 11, 2016 and August 23, 2016. After the court empaneled the jury, it instructed the jury, consistent with Washington Pattern Jury Instruction (WPIC) 1.01,[1] not to discuss the matter with others, including other jurors. In addition, the trial court noted that this instruction applied to the entire proceedings, even if it was not repeated.

Russell proposed a set of standard jury instructions, including WPIC 1.04, which states:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to re-examine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.

The trial court adopted this instruction as Instruction 2. Instructions 28 (proposed by Russell) and 29 further informed the jury of the importance of a unanimous verdict. Russell did not object to these instructions. Nor did he propose any additional instructions regarding the jury's deliberative process.

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.01 (4th ed. 2016) (WPIC).

After deliberating more than four hours over two days, the jury found Russell guilty as charged. A jury poll confirmed that its verdict was unanimous. At his sentencing hearing, the trial court entered a judgment and sentence for a term of 756 months and imposed lifetime no-contact orders with the murder victims' families and the assault victim and her family. Russell appeals.

## ANALYSIS

Russell argues that the trial court erred by failing to instruct jurors that their deliberation must only occur in the jury room and only then when all 12 jurors are present. He contends there is no basis to assume the verdict was unanimous. We reject this argument.

The Washington State Constitution guarantees criminal defendants the right to a unanimous verdict. CONST. art. 1 §§ 21, 22; see State v. Lamar, 180 Wn.2d 576, 583, 327 P.3d 46 (2014). Jury unanimity is only achieved when the verdict is reached through consensus. Lamar, 180 Wn.2d at 585. Because Russell raises this issue for the first time on appeal, RAP 2.5(a)(3) requires that he must establish manifest error affecting a constitutional right. "RAP 2.5(a)(3) serves a gatekeeping function that will bar review of claimed constitutional errors to which no exception was made unless the record shows that there is a fairly strong likelihood that serious constitutional error occurred." Id. at 583.

Recently, in State v. Sullivan, this court rejected an identical argument to that raised by Russell. 3 Wn. App. 2d 376, 415 P.3d 1261 (2018). The court held that "without evidence to demonstrate that the jury did not deliberate as a whole," a party's asserted error cannot be considered manifest and declined to

address the merits of Sullivan's argument. Id. at 381. Sullivan offered no evidence that the jury failed to deliberate as a whole, and instead speculated that during deliberations, at least one juror must have left the room for a bathroom break. Id. at 380. The court reasoned that speculation that a juror may have left the jury room during deliberations was insufficient to warrant review under RAP 2.5(a)(3). Id. at 380-81; see also State v. St. Peter, 1 Wn. App. 2d 961, 963, 408 P.3d 361 (2018). There is nothing here to distinguish this case from Sullivan. Russell has not established manifest error.

Russell also argues that the failure to instruct a jury in a criminal trial how to achieve unanimity constitutes structural error, which unlike manifest error, does not require a showing of actual prejudice. Structural error is a special category of constitutional error, not subject to the harmless error analysis, that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself. State v. Wise, 176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012). Structural error necessarily renders a trial fundamentally unfair. See Rose v. Clark, 478 U.S. 570, 577, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986).

Russell compares this error to the structural error of incorrectly instructing a criminal jury on the reasonable doubt standard, Sullivan v. Louisiana, 508 U.S. 275, 281-82, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993), or in closing the courtroom during voir dire to individually question jurors, Wise, 176 Wn.2d at 15. We find neither case analogous to this case.

In Sullivan v. Louisiana, the state conceded that an erroneous reasonable doubt instruction had been given at trial. 508 U.S. at 277. The only question

was whether this constitutional error was amenable to a harmless error analysis or whether it fell into the category of an error that would always invalidate a conviction. Id. at 279. Here, Russell has not established that any error occurred. The authority on which Russell relies does not require such an instruction be given. Indeed, because trial counsel did not request an instruction, we cannot determine if it would have been error to refuse it. On this record, in which no error has been shown, we cannot determine if the hypothetical error might require evidence of actual prejudice. Therefore, Russell has not established structural error.

Lastly, Russell argues the trial court exceeded the 10-year statutory limit when it imposed a lifetime no-contact order with Heather McKenzie, the assault victim, and her family.

A no-contact order is a crime-related prohibition that a trial court may impose as a sentencing condition. State v. Armendariz, 160 Wn.2d 106, 119, 156 P.3d 201 (2007). However, the maximum operative length of the no-contact order, or any crime-related prohibition, cannot exceed the statutory maximum sentence for the connected crime. Id. at 120. Because the statutory maximum sentence for murder in the first degree is life imprisonment, the lifetime no-contact orders for the murder victims' families are correct. RCW 9A.32.040. Second degree assault, however, is a class B felony. See RCW 9A.36.021(2)(a). The statutory maximum sentence for class B felonies in most cases is 10 years. RCW 9A.20.021(1)(b). Therefore, the no-contact order associated with the

second degree assault conviction cannot exceed 10 years.[2]  The remedy for

clerical or scrivener's errors in judgment and sentence forms is remand to the

trial court for correction.  CrR 7.8(a); see RAP 7.2(e).

We affirm Russell's convictions, but remand for the trial court to correct

the scrivener's error.

WE CONCUR:

_Andrus, J._

_Dwyer, J._

_Appelwick, C.J._

---

[2] Although the State conceded in briefing that Russell's judgment and sentence contained a scrivener's error that required correction, at oral argument, the State sought to retract the concession based on State v. Navarro, 188 Wn. App. 550, 354 P.3d 22 (2015).  In that case, Navarro was convicted of eight counts of communication with a minor for immoral purposes and two counts of extortion.  Id. at 552.  The trial court entered no-contact orders for 10 years, the maximum term of the extortion conviction, protecting all of his victims, including those minors who were not victims of the extortion.  Id. at 556.  The maximum term for communication with a minor for immoral purposes is five years.  Id.  This court affirmed the 10-year no-contact orders, concluding that all minors were directly connected to the circumstances of the extortion crime because the "evidentiary value of each boy's testimony was not limited to proving the count for which he was the victim."  Id. at 556.

In this case, the State analogized that the assault victim's testimony was relied on—particularly in closing argument—to put Russell in the vicinity for the murders and to show his demeanor that morning.  Because there was video surveillance of the murders, as well as other witness testimony, and the difference between a lifetime no-contact order and a 10-year no-contact order is potentially much longer than the five-year difference in Navarro, the analogy between this case and Navarro is too attenuated.  Therefore, we decline to extend Navarro to the circumstances of this case.

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2018 OCT 15 AM 8:50