IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Petition for an Order for Protection of: | ) ) ) | No. 36988-9-III |
| K.G.T.,† | ) ) | |
| Minor to be protected, | ) ) | |
| KATHERINE ANNE GILMORE, | ) ) | PUBLISHED OPINION |
| Respondent, | ) ) | |
| v. | ) ) | |
| A.R.S., | ) ) | |
| Minor Appellant. | ) | |

PENNELL, C.J. — Washington's anti-harassment statute authorizes parents to petition for civil protection orders on behalf of their minor children. But when the person the parent seeks to restrain is another child, the availability for relief is limited; the parent must first show the respondent child has been adjudicated or investigated for an offense against the child to be protected. Unless this factual prerequisite is met, a trial court lacks discretionary authority to adjudicate the petition and issue a protection order.

† To protect the privacy interests of the minor parties, we use their initials throughout this opinion. Gen. Order 2012-1 of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

No. 36988-9-III
*In re Petition for an Order for Protection of K.G.T.*

The issue in this case is what qualifies as a predicate "investigation" for an "offense" under the terms of the statute. We hold the terminology chosen by the legislature contemplates a criminal inquiry by law enforcement that extends beyond mere passive receipt of information. Because the facts in this case do not meet this standard, the superior court lacked authority for issuing a protection order against A.R.S. The order of protection must therefore be vacated and the underlying petition for protection dismissed.

## FACTS

High school freshman A.R.S. found herself in an ongoing feud with another student, K.G.T. The conflict included repeated threats by A.R.S. to assault K.G.T. As a result of this conflict, K.G.T.'s grades, attendance, and health suffered. Despite intervention by the school and K.G.T.'s mother, tensions between the two students escalated. The conflict came to a head on May 9, 2019. That day, the girls agreed to meet and settle their differences in a school bathroom.

Perhaps predictably, differences were not settled. A.R.S. became verbally aggressive and shoved K.G.T, sending her into a wall and against a trash can. A teacher entered the bathroom and ended the confrontation. The girls were then brought before the school's assistant principal. After questioning A.R.S., K.G.T., other students, and the

2

teacher who ended the confrontation, the assistant principal decided to treat the incident as a matter of school discipline.

That evening, K.G.T.'s mother left a message with the high school's resource officer, informing him K.G.T. had sprained her ankle and they were considering pressing criminal charges. The next day, the resource officer held a meeting between himself, K.G.T., her mother, and the assistant principal. At the meeting, the mother informed the resource officer she had decided not to press charges after all and would instead seek a restraining order. The resource officer did not pursue the matter further. Ultimately, the assistant principal issued school discipline against both K.G.T. and A.R.S., suspending K.G.T. from school for one day, and A.R.S. for three days.

Several days later, K.G.T.'s mother filed a civil anti-harassment protection petition against A.R.S. on behalf of K.G.T. A superior court commissioner issued a temporary protection order that day. At a subsequent hearing on the merits, the commissioner received testimony from both the assistant principal and the school resource officer. The assistant principal testified that a school investigation, but not a criminal investigation, had occurred. The commissioner questioned the resource officer for further details about the matter:

> THE COURT: But just to clarify, I believe [the assistant principal] stated that there was an investigation of this matter, correct?

No. 36988-9-III
*In re Petition for an Order for Protection of K.G.T.*

> [RESOURCE OFFICER]: Yes, there was a school investigation—
> THE COURT: Okay.
> [RESOURCE OFFICER]: —in conjunction with me initially on [May] 10th; a criminal investigation. But the moment they said they didn't want criminal charges, it became—it became a school investigation only.
> THE COURT: Okay.
> [RESOURCE OFFICER]: Not a criminal investigation.

Clerk's Papers (CP) at 53-54. The resource officer also commented he likely would not have found probable cause to arrest A.R.S. had he pursued the matter further.

Through her attorney, A.R.S. contended the superior court lacked jurisdiction to issue a civil anti-harassment order under RCW 10.14.040(7) because no criminal investigation had occurred. The commissioner disagreed and granted the petition. A.R.S. was ordered to have no contact with K.G.T., but was not restrained from attending the same school. The school was ordered to use its best efforts to keep A.R.S. and K.G.T. separated.

A.R.S. unsuccessfully moved to revise the commissioner's ruling. A.R.S. now appeals the superior court's denial of her motion for revision, again arguing that the court lacked jurisdiction under RCW 10.14.040(7).

ANALYSIS

Civil anti-harassment protection orders are governed by chapter 10.14 RCW. The law allows the parent of a minor child to petition on the child's behalf for a

4

protection order against another minor child, but only in limited circumstances:

> The parent or guardian of a child under the age of eighteen may petition in superior court for an order of protection to restrain a person under the age of eighteen years from contact with that child only in cases where the person to be restrained has been adjudicated of an offense against the child protected by the order, or *is under investigation or has been investigated for such an offense*.

RCW 10.14.040(7) (emphasis added).

At issue here is what is meant by the foregoing emphasized language. Does the statute refer broadly to any type of investigation, regardless of type or depth? Or is it more circumscribed, so as to place specific limits on a trial court's authority to issue a protection order against a minor child? This is an issue of statutory interpretation, a legal matter we review de novo. *State v. James-Buhl*, 190 Wn.2d 470, 474, 415 P.3d 234 (2018). Although a trial court's overall decision about whether to issue a protection order is reviewed for abuse of discretion, discretion is abused if the protection order decision is rooted in legal error. *Ugolini v. Ugolini*, 11 Wn. App. 2d 443, 446, 453 P.3d 1027 (2019).

The goal of statutory interpretation is to discern and implement the legislature's intent. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). We begin with the written text and endeavor to uncover the statute's plain meaning. This involves an analysis of not only specific words, but also context, including related statutes. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). Dictionaries may be consulted

5

when the legislature has left statutory terms undefined. *State v. Barnes*, 189 Wn.2d 492, 495-96, 403 P.3d 72 (2017). But other outside sources cannot be consulted unless a statute is deemed truly ambiguous. *Armendariz*, 160 Wn.2d at 110. An unambiguous statute needs no further construction and must be given its plain meaning. *Id.*

Turning first to context, RCW 10.14.040(7) was written to require third-party involvement before a parent can seek a protection order for their minor child against another minor child. A parent can petition for their minor child's protection against an adult based only on a showing of potential harm. RCW 10.14.040(6). But a petition for protection against another child requires more. To file for an order of protection against a child, a parent must show that the child to be restrained has been adjudicated of an offense against the child to be protected, or is currently or was previously under investigation for an offense against that child. RCW 10.14.040(7). In other words, under RCW 10.14.070(7), a parent's individual concerns on behalf of their child are not enough to warrant a petition. Instead, the parent's concerns must have been shared, at least to an extent, with an independent adjudicator or investigator.

The specific words used in RCW 10.14.040(7) further indicate law enforcement is the third party that must be involved in a respondent child's adjudication or investigation. In the juvenile context, the words "adjudication" and "offense" refer

6

to crimes. RCW 13.04.011(1); RCW 13.40.020(21). The role of investigating crimes falls to law enforcement agents. School officials and other authorities involved in children's lives do not qualify unless they are somehow affiliated with law enforcement.

The term adjudication clearly refers to a juvenile conviction,[1] but the term investigation requires further examination. Webster's defines the verb "investigate" as "to make a systematic examination**: STUDY;** *specif* **:** to conduct an official inquiry." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1189 (1993). Similarly, Black's Law Dictionary defines the term as "**1.** To inquire into (a matter) systematically; to make (a suspect) the subject of a criminal inquiry <the police investigated the suspect's involvement in the murder>. **2.** To make an official inquiry <after the judge dismissed the case, the police refused to investigate further>." BLACK'S LAW DICTIONARY 989 (11th ed. 2019).

These definitions indicate a law enforcement agent's act of investigating involves more than merely receiving a complaining witness's information. To investigate, an agent must act systematically. In other words, there must be not only receipt of information, but a follow-up plan for what to do with the information. There is no systematic investigation if a law enforcement agent merely receives information and then decides that no action is

---

[1] RCW 13.04.011(1).

warranted.

When read in context, it makes good sense that the verb investigate as used in RCW 10.14.040(7) requires law enforcement to do more than merely passively receive information. As noted, this statute is written to limit a parent's ability to obtain an anti-harassment protection order against another's minor child. If the investigation prerequisite could be met any time a law enforcement agent received information from a complaining parent, there would be no meaningful limitation; a parent could simply create a basis for an anti-harassment petition by contacting law enforcement and voicing a complaint. RCW 10.14.040(7) was written to require something more.

The facts here do not satisfy the criteria of an adjudication or law enforcement investigation as contemplated by RCW 10.14.040(7). A school resource officer might be considered a law enforcement agent, but the officer here did nothing beyond passively receiving a complaint from K.G.T. and her mother. We recognize the officer testified he "ended the investigation," at the close of his conversation with K.G.T. and her mother. CP at 52-53. However, this choice of words is not legally controlling. The officer's 30-minute conversation with K.G.T. and her mother amounted only to an initial receipt of information. After hearing from K.G.T. and her mother, the officer decided not to conduct a follow-up. There is no evidence in the record of anyone else affiliated with law

enforcement taking any further action. Given this state of the record, the evidence does not show A.R.S. was the subject of a criminal investigation, as required by statute.

Because A.R.S. was never the subject of a criminal adjudication or investigation regarding K.G.T., K.G.T.'s mother lacked a factual basis for obtaining an anti-harassment protection order. Without a factual predicate for a petition, the superior court lacked authority to assess the merits of the case and decide on the propriety of the order.

## CONCLUSION

The protection order issued against A.R.S. is vacated. This matter is remanded with instructions to dismiss the underlying petition for protection.[2]

_____
Pennell, C.J.

WE CONCUR:

_____     _____
Siddoway, J.                                            Lawrence-Berrey, J.

---

[2] A.R.S. also seeks relief in the form of the destruction of the superior court orders from the record, but fails to cite to any statutory authority permitting these records to be destroyed. GR 15(h)(1)-(2). As such, we decline to address this request, without prejudice to A.R.S. to raise it in the superior court on remand.

9