# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| END PRISON INDUSTRIAL COMPLEX, | No. 49453-1-II |
| Appellant, | |
| v. | |
| KING COUNTY, | PUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — End Prison Industrial Complex (EPIC) sued King County to challenge the County's calculation of property tax increases under Proposition 1 (Prop. 1), a local ballot measure that authorized a property tax levy at a rate above the limit established in ch. 84.55 RCW. EPIC claimed that although the language of the Prop. 1 ballot title authorized an increased tax rate in the first year of the levy, the ballot title's language did not expressly state, as required in RCW 84.55.050,[1] that the increased base tax amount in the first year could be used to calculate future years' increases. In addition, EPIC claimed that the ballot title did not expressly and clearly state, as required in RCW 84.55.050, that the tax proceeds could be used to construct a juvenile detention facility.

---

[1] The legislature amended RCW 84.55.050 in 2017. LAWS OF 2017, ch. 296, § 2. We cite to the version of the statute in effect when EPIC sued King County, former RCW 84.55.050 (2009), throughout this opinion.

The superior court granted the County's summary judgment motion and dismissed EPIC's claims, ruling that (1) EPIC's claims were untimely, (2) the ballot title language was sufficient under RCW 84.55.050 to authorize the County to levy property taxes in future years based on the increased base tax amount in the first year, and (3) the ballot title language was sufficient to limit the use of the tax proceeds to purposes including the construction of a juvenile detention facility. EPIC appeals all three rulings.

We hold that EPIC's challenge to the County's calculation of subsequent levy amounts was timely. We also hold that Prop. 1's ballot title did not expressly authorize the County to levy property taxes based on the increased base tax amount in the first year of the levy. Thus, we reverse the order granting summary judgment on this point. However, we further hold that the ballot title authorized use of those funds for a limited purpose that included the construction of a juvenile detention facility. Thus, we affirm the superior court on this point. Accordingly, we reverse in part and affirm in part the superior court's order granting the County's summary judgment motion. We remand for further proceedings.

FACTS

I. REAL PROPERTY TAX LEVIES

Central to this case is the system by which taxing districts calculate and impose real property taxes under ch. 84.55 RCW, which limits the rate at which a taxing district may increase the regular property tax levy amount. *See Wash. Citizens Action of Wash. v. State*, 162 Wn.2d 142, 145, 171 P.3d 486 (2007). RCW 84.55.010, the "levy lid" statute, imposes an amount that each year's regular property taxes may not exceed, calculated using the following formula:

> [T]he limit factor multiplied by the amount of regular property taxes lawfully levied
> for such district in the highest of the three most recent years in which such taxes

were levied for such district plus an additional dollar amount calculated by multiplying the regular property tax levy rate of that district for the preceding year by the increase in assessed value in that district.

The limit factor, which is defined by RCW 84.55.005(2), is 101 percent.[2]

RCW 84.55.050 allows a taxing district to exceed the levy lid under certain circumstances. This "levy lid lift" statute authorizes a taxing district to submit to voters a proposition that will lift the levy lid. RCW 84.55.050(1). The dollar amount of such a levy lid lift may not be used as the base amount for computing "subsequent levies" unless the proposition "expressly" states that the levy will be used for this purpose. RCW 84.55.050(3); *see also* RCW 84.55.050(4)(a). "Except as otherwise expressly stated in an approved ballot measure," subsequent levies are calculated as if the levy lid lift proposition "had not been approved." RCW 84.55.050(5)(a).

Under RCW 84.55.050(4)(c), the purpose for which levy lid lift funds are used also may be limited. But the proposition must "clearly" and "expressly" state that this condition will apply. RCW 84.55.050(1), (4)(c).

## II. BACKGROUND

In 2012, voters approved Prop. 1. Prop. 1 implemented Ordinance 17304 and had the stated purpose of "concerning a replacement facility for juvenile justice and family law services." Clerk's Papers (CP) at 367. Prop. 1 authorized "an additional property tax for nine years to fund capital costs to replace the Children and Family Justice Center." CP at 367.

---

[2] RCW 84.55.005(2) sets the limit factor for most districts as either 101 percent, RCW 84.55.005(2)(a), or the lesser of 101 percent or 100 percent plus inflation, RCW 84.55.005(2)(c). For our purposes, it can be assumed that the limit factor is 101 percent.

In April 2016, EPIC, a nonprofit corporation, sued the County and alleged that the County had over-collected property taxes under Prop. 1 beginning in 2014 and that Prop. 1's ballot title concealed from voters that Prop. 1 would be used to fund a "new youth jail." CP at 3. EPIC sought declaratory and injunctive relief to bar the County from levying additional excessive property taxes and spending Prop. 1 funds on a "new youth jail" and to force the County to refund excessive property taxes that had already been collected. CP at 16.

### III. SUMMARY JUDGMENT MOTIONS

### A. COUNTY'S REQUEST FOR SUMMARY JUDGMENT

1. COUNTY'S SUMMARY JUDGMENT MOTION

In July 2016, the County moved for summary judgment. The County argued that EPIC's lawsuit was untimely because EPIC had not brought a preelection ballot title challenge under RCW 29A.36.090. The County alternatively argued that summary judgment was appropriate because the ballot title adequately informed voters of the method by which property taxes would be calculated and the purpose for the taxes.

a. PREELECTION EVIDENCE

In support of its motion, the County submitted materials including the full text of Ordinance 17304 and related reports given to the county council. A 2012 county council committee report addressed a proposed ballot measure authorizing a property tax levy to replace the existing "Youth Services Center" in Seattle with a "new Children and Family Justice Center." CP at 97. The existing structure consisted of three conjoined buildings that housed courtrooms, administrative offices, a youth detention facility, and on-site parking. The report proposed constructing a new courthouse, a new detention center, and additional parking.

4

Ordinance 17304, adopted in 2012, provided for a proposition to be passed

concerning funding for a replacement facility for the Children and Family Justice Center. This proposition would authorize King County to levy an additional property tax to provide funding for capital costs to replace the Children and Family Justice Center, which serves the justice needs of children and families. It would authorize King County to levy an additional regular property tax of $0.07 per $1,000 of assessed valuation for collection in 2013. *The 2013 levy amount would become the base upon which levy increases would be computed for each of the eight succeeding years.*

CP at 85 (emphasis added). Ordinance 17304 defined the "'[c]hildren and family justice center

replacement project'" to include replacement of the "detention facilities" at the "children and

family justice center." CP at 83.

b. ELECTION EVIDENCE

The County also submitted the ballot title and explanatory statement written by the

prosecuting attorney, the voter's pamphlet page discussing Prop. 1, and the election results. As

presented to voters, the ballot title of Prop. 1 stated,

**Proposition No. 1**
**Children and Family Services Center Capital Levy**
The King County council passed Ordinance No. 17304 concerning a replacement facility for juvenile justice and family law services. This proposition would authorize King County to levy an additional property tax for nine years to fund capital costs to replace the Children and Family Justice Center, which serves the justice needs of children and families. It would authorize King County to levy an additional regular property tax of $0.07 per $1,000 of assessed valuation for collection in 2013. *Increases in the following eight years would be subject to the limitations in chapter 84.55 RCW, all as provided in Ordinance No. 17304.* Should this proposition be:
() Approved
() Rejected

CP at 367 (emphasis added).

Before the election, county voters had also received the ballot title, an explanatory

statement, and the entire text of Ordinance 17304 in their voters' pamphlets. The explanatory

statement told voters that Prop. 1 would authorize "an additional regular property tax" to replace and expand the Children and Family Justice Center, including "replacement of the . . . detention facilities." CP at 251.

A majority of voters approved Prop. 1.

c.      IMPLEMENTATION EVIDENCE

Related to the implementation of Prop. 1, the County submitted the declaration of Hazel Gantz, who calculated county property taxes including Prop. 1's levy. Gantz explained that Prop. 1's levy proceeds were kept in a separate fund from other levy proceeds because of Prop. 1's limited purpose.

Gantz described how she calculated the levy under Prop. 1. For 2013, the first year, Gantz relied upon the ballot title and applied the first year levy rate[3] to the total taxable value in the County to arrive at the highest lawful Prop. 1 levy amount for 2013.

For 2014, Gantz referred to the "ballot title, explanatory statement, and the ordinance" to determine the allowable increase in the levy amount. CP at 279. Gantz explained that for Prop. 1,

> [t]he ballot title states that after the first year of the levy, "[i]ncreases in the following eight years would be subject to the limitations in chapter 84.55 RCW[.] . . ." This language indicates that increases in each year of the levy after the first year would be subject to the statutory limit factor of 101%.

CP at 280 (some alterations in original). Thus, Gantz multiplied the limit factor of 101 percent by the amount lawfully levied in the highest of the three most recent years, which was the 2013 levy amount, and added the additional dollar amount.

---

[3] "$0.07 per $1,000 of assessed valuation." CP at 278.

For the remaining years, 2015 to 2021, Gantz explained that, again, the 101 percent limit factor was or would be applied to the preceding year's highest lawful levy amount. In 2022, the 101 percent limit factor would be applied to "what would have been the County's highest lawful levy amount in 2021" had the Prop. 1 levy "never occurred." CP at 281.

2. EPIC'S RESPONSE

In response to the County's summary judgment motion, EPIC argued that as a matter of law, its claim was not untimely. Further, EPIC relied upon Gantz's declaration to argue that the County's method for collecting taxes levied under Prop. 1 beginning in 2014 was prohibited by RCW 84.55.050 unless expressly stated in the ballot title.[4]

Regarding the sufficiency of the ballot title's disclosure of the limited use for Prop. 1 funds, EPIC argued that the County failed to expressly state that the funds would be used for a "youth jail." CP at 388. EPIC sought to have summary judgment on this issue denied so that EPIC could produce additional evidence; alternatively, EPIC requested that the superior court grant summary judgment in EPIC's favor on the issue as a matter of law.

In support of its opposition, EPIC relied upon descriptions of other "Family" or "Children's" justice centers and reports related to the "Children and Family Justice Center" replacement project.

---

[4] EPIC also requested that the County's summary judgment motion be denied on the basis that there were "factual issues" related to Prop. 1's limitation: specifically, the procedure by which the levy was calculated and the funds raised were tracked.

### B.  EPIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

A day after the County moved for summary judgment, EPIC moved for partial summary judgment on whether Prop. 1's ballot title had expressly stated that the 2013 levy amount would be used to compute subsequent levies' limitations, as EPIC claimed that RCW 84.55.050 required. EPIC's motion stated that this issue was the only issue that was appropriate for summary judgment. In support of its motion, EPIC relied upon the ballot measure for Prop. 1, the full text of Ordinance 17304, and other materials, including the legislative history for RCW 84.55.050.

### IV.  SUMMARY JUDGMENT RULING

In August, the superior court granted the County's summary judgment motion, denied EPIC's partial summary judgment motion, and dismissed the case with prejudice. The superior court determined that there were no genuine issues of material fact and that as a matter of law, EPIC's challenge was untimely under RCW 29A.36.090 and, alternatively, that Prop. 1's ballot title met the statutory requirements of RCW 84.55.050.

EPIC appeals the superior court's summary judgment order.

### ANALYSIS

### I.  PRINCIPLES OF LAW:  SUMMARY JUDGMENT AND STATUTORY INTERPRETATION

We review de novo the superior court's grant of summary judgment. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). In doing so, we perform the same inquiry as the superior court, and we affirm where "'there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Lakey*, 176 Wn.2d at 922 (quoting *Qwest Corp. v. City of Bellevue*, 161 Wn.2d 353, 358, 166 P.3d 667 (2007)). We must review the

evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Lakey*, 176 Wn.2d at 922.

We also review de novo questions of statutory interpretation, with the goal of effectuating the legislature's intent. *Burns v. City of Seattle*, 161 Wn.2d 129, 140, 164 P.3d 475 (2007). Where a statute's meaning is plain, we give effect to that plain meaning. *Burns*, 161 Wn.2d at 140. To discern plain meaning, we look to the "words of a particular provision in the context of the statute in which they are found, together with related statutory provisions, and the statutory scheme as a whole." *Burns*, 161 Wn.2d at 140. Our inquiry ends if the statute's plain meaning is unambiguous. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Our courts have relied on the "ordinary, dictionary meaning" of a word to determine its plain meaning. *Burns*, 161 Wn.2d at 141.

## II. PROCEDURAL BAR

EPIC argues that the superior court erred when it ruled that EPIC's failure to bring a preelection ballot title challenge barred EPIC's postelection request for declaratory and injunctive relief under RCW 29A.36.090. EPIC argues that its lawsuit was not a ballot title challenge but an attempt to enforce the ballot title as written and passed by voters. The County responds that the superior court properly granted summary judgment because EPIC's claims were untimely under RCW 29A.36.090. The County characterizes EPIC's claims as challenges "to the ballot title[,] not

to the underlying legislation." Br. of Resp't at 18. We agree with EPIC that its claim was not a ballot title challenge.[5]

RCW 29A.36.090 provides a preliminary procedure by which "dissatisfied" persons may object to a ballot title and seek its amendment to conform with the requirements of ch. 29A.36 RCW. That statute requires a challenge to a ballot title to be filed within 10 days of when the ballot title is filed with the county auditor. RCW 29A.36.090.

The provisions of another statute in ch. 29A.36 RCW require ballot titles to identify the enacting legislative body, state the subject matter, concisely describe the proposition, and contain a question. RCW 29A.36.071(1)(a)-(c). Also, RCW 29A.72.050(1) requires that the statement of the proposition's subject must be "sufficiently broad to reflect" the proposition's subject and "sufficiently precise to give notice" of the proposition's subject matter and that the description of the proposition be true and impartial and clearly identify the proposition.

But EPIC's claims are not that the ballot title was infirm under RCW 29A.36.090, RCW 29A.36.071(1)(a)-(c), or RCW 29A.72.050(1). EPIC does not object to the language of the ballot title. Rather, EPIC claims that the ballot title language approved by voters was insufficient under RCW 84.55.050 to allow the County to use the Prop. 1 levy authorized for the first year as a base to compute the amount of levies for subsequent years or to limit the purpose of Prop. 1 funds.

Because EPIC seeks to enforce the terms of the ballot title as written and approved by voters, claiming the ballot title's language was insufficiently "express" to authorize the County's

---

[5] Because we agree with EPIC that its claim was not a ballot title challenge, we do not address EPIC's alternative arguments that failure to bring a preelection ballot title challenge does not bar a postelection challenge or that its claims were unripe before the election and thus could not have been brought under RCW 29A.36.090.

method for calculating tax levies beginning in 2014 and insufficiently "express" and "clear" to limit the purpose for which the proceeds were used, EPIC's claim is not a challenge to the ballot's title that must be brought preelection. *See* RCW 84.55.050(1), (4). We accordingly hold that the superior court erred when it ruled that EPIC's challenge to the calculation of subsequent levy amounts was untimely and granted the County's summary judgment motion.[6]

### III. EPIC'S CLAIMS UNDER RCW 84.55.050

EPIC next argues that the ballot title did not expressly authorize the method by which the County has calculated tax levies under Prop. 1 beginning in 2014 or expressly limit the purpose for the County's use of Prop. 1 funds.[7] We agree with the first argument but disagree with the second argument.

### A. RCW 84.55.010: THE "LEVY LID" STATUTE

RCW 84.55.010 prescribes the levy lid and sets limitations on regular property taxes as follows:

> Except as provided in this chapter, the levy for a taxing district in any year must be set so that the regular property taxes payable in the following year . . . [do] not exceed the limit factor multiplied by the amount of regular property taxes lawfully levied for such district in the highest of the three most recent years in which such taxes were levied for such district plus an additional dollar amount calculated by multiplying the regular property tax levy rate of that district for the preceding year by the increase in assessed value in that district resulting from:
> (1) New construction;

---

[6] EPIC also challenged Prop. 1's use of the levy funds for the limited purpose of constructing a youth services center. Even if we assume, without deciding, that this challenge is not time-barred, this argument fails as discussed below.

[7] At one point, EPIC claims that the superior court "did not resolve" the merits of EPIC's claims and only ruled that those claims were procedurally barred. Br. of Appellant at 3. To the contrary, the superior court determined that Prop. 1's ballot title met the requirements of RCW 84.55.050, as well as that EPIC's claims were untimely.

(2) Increases in assessed value due to construction of wind turbine, solar, biomass, and geothermal facilities . . . ;

(3) Improvements to property; and

(4) Any increase in the assessed value of state-assessed property.

(Second alteration in original.)

## B. RCW 84.55.050: THE "LEVY LID LIFT" STATUTE

RCW 84.55.050 governs elections to authorize increases in regular property tax levies and lift the levy lid created by RCW 84.55.010. As relevant here, RCW 84.55.050 provided,

(1) Subject to any otherwise applicable statutory dollar rate limitations, regular property taxes may be levied . . . in an amount exceeding the limitations provided for in this chapter if such levy is authorized by a proposition. . . . Any election held pursuant to this section shall be held not more than twelve months prior to the date on which the proposed levy is to be made, except as provided in subsection (2) of this section. *The ballot of the proposition shall state the dollar rate proposed and shall clearly state the conditions, if any, which are applicable under subsection (4) of this section.*

(2)(a) Subject to statutory dollar limitations, a proposition placed before the voters under this section may authorize annual increases in levies for multiple consecutive years, up to six consecutive years, during which period each year's authorized maximum legal levy shall be used as the base upon which an increased levy limit for the succeeding year is computed, but the ballot proposition must state the dollar rate proposed only for the first year of the consecutive years and must state the limit factor, . . . by which the regular tax levy for the district may be increased in each of the subsequent consecutive years. . . . The title of each ballot measure must state the limited purposes for which the proposed annual increases during the specified period of up to six consecutive years shall be used.

. . . .

(3) After a levy authorized pursuant to this section is made, *the dollar amount of such levy may not be used for the purpose of computing the limitations for subsequent levies provided for in this chapter, unless the ballot proposition expressly states that the levy made under this section will be used for this purpose.*

(4) *If expressly stated*, a proposition placed before the voters under subsection (1) or (2) of this section may:

(a) *Use the dollar amount of a levy under subsection (1) of this section*, or the dollar amount of the final levy under subsection (2) of this section, *for the purpose of computing the limitations for subsequent levies provided for in this chapter*;

. . . .

(c) *Limit the purpose for which the increased levy is to be made under (a) of this subsection*, but if the limited purpose includes making redemption payments

12

on bonds, the period for which the increased levies are made shall not exceed nine years;

. . . .

(5) *Except as otherwise expressly stated in an approved ballot measure under this section, subsequent levies shall be computed as if:*

(a) *The proposition under this section had not been approved*; and

(b) The taxing district had made levies at the maximum rates which would otherwise have been allowed under this chapter during the years levies were made under the proposition.

(Emphasis added.)

## C. NO EXPRESS STATEMENT THE PROP.1 LEVY LIFT AMOUNT WOULD BE USED TO CALCULATE FUTURE LEVIES

EPIC argues that the County has improperly implemented Prop. 1 since 2014 because voters did not expressly authorize the County to use the 2013 levy amount to calculate the base amount for levies beginning in 2014. The County responds that the ballot title authorized the County's method of calculating property taxes since 2014.[8] We agree with EPIC.

Here, voters passed Prop. 1, the ballot title for which stated, as relevant,

This proposition would authorize King County to levy an additional property tax for nine years. . . . It would authorize King County to levy an additional regular property tax of $0.07 per $1,000 of assessed valuation for collection in 2013. Increases in the following eight years would be subject to the limitations in chapter 84.55 RCW, all as provided in Ordinance No. 17304.

CP at 367.

In 2013, the County applied the first year levy rate of $0.07 per $1,000 of assessed valuation to arrive at the highest lawful levy amount for 2013 under Prop. 1. Beginning in 2014, the County collected property taxes by applying the limit factor from RCW 84.55.005(2) (101

---

[8] Notably, the parties agree that the County implemented Prop. 1 under RCW 84.55.050(1), not .050(2) and that the operative document for compliance with RCW 84.55.050 is Prop. 1's ballot title.

13

percent) to 2013's highest lawful levy amount, as the highest amount in the previous three years, and adding a sum related to new construction. The levy under Prop. 1 has been and will continue to be similarly calculated until 2022, when the Prop. 1 levy will expire, and the limit factor (101 percent) will be applied to "what would have been the County's highest lawful levy amount in 2021 had the [Prop. 1] Levy never occurred." CP at 281.

We agree with EPIC that the County's methodology for calculating taxes beginning in 2014 involved the use of the 2013 levy to "comput[e] the limitations for subsequent levies" under RCW 84.55.050(3), (4)(a).

Next, we determine what language the ballot title had to include in order for the County to use the increased 2013 levy amount authorized by Prop. 1 as the base amount to calculate the 2014 levy. RCW 84.55.050(3), (4)(a), and (5) require that in order to compute limitations for "subsequent levies" using the dollar amount of a levy authorized by a proposition, the proposition's ballot title must have "expressly state[d]" so. We look to the plain meaning of RCW 84.55.050(3), (4)(a), and (5). *See Burns*, 161 Wn.2d at 140. In doing so, we may rely upon the ordinary, dictionary meaning of "expressly." *See Burns*, 161 Wn.2d at 141.

"[E]xpressly" means "in direct or unmistakable terms" and "explicitly." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 803 (2002). To state a matter "explicitly" is, in turn, to state it in a manner that is "characterized by full clear expression," "without vagueness or ambiguity," and "unequivocal." WEBSTER'S 801. Thus, RCW 84.55.050 (3), (4)(a), and (5) require a ballot title to state "in direct and unmistakable terms" and in a manner that is "characterized by full clear expression" and is not vague, ambiguous, or equivocal that a specific levy amount will be used to compute the limitations for subsequent levies. WEBSTER'S 801.

Here, the ballot title provided no such express statement. Rather than providing an unmistakable, explicit statement that the County would use the 2013 levy lift amount to compute subsequent levies, the County included a vague statement that "[i]ncreases in the following eight years would be subject to the limitations in ch. 84.55 RCW, all as provided in Ordinance No. 17304." CP at 367.

The County argues that the only reasonable reading of the ballot title is that the levy lid lift amount would be used to calculate later years' levy amounts. But the test is not merely what a reasonable reading of the ballot title might be. The statute requires that the ballot title *expressly* state that the 2013 increased levy lift amount would be used to compute subsequent levy amounts. We do not hold that the ballot title must incant certain "magic language" to satisfy the statute. Rather, we hold that RCW 84.55.050(3), (4)(a), and (5) dictate that a ballot title must expressly convey that an increased levy lid lift amount will be used to calculate later years' levy amounts. The Prop. 1 ballot title failed to do this.

The County also argues that we must interpret the ballot title to authorize the 2013 levy to be used to compute subsequent levies because otherwise, there would be no "[i]ncreases in the following eight years." CP at 367. We disagree: the vague statement that there would be "[i]ncreases" in years two through nine expressly conveyed no more than that property taxes would be greater in those years than before the levy's implementation. CP at 367. An *implication* that the 2013 levy amount would be used to compute the amount of subsequent levies is insufficient to satisfy RCW 84.55.050's requirement of an express statement.[9]

---

[9] Indeed, the council apparently knew how to expressly state that the 2013 levy amount would be used to compute the amount of subsequent levies: the ballot title proposed by Ordinance 17304

We hold that RCW 84.55.050's plain meaning requires that Prop. 1's ballot title expressly state that the levies following 2013 would be calculated based upon 2013's increased levy amount. We further hold that Prop. 1's ballot title did not expressly state that the subsequent levies would be calculated based upon 2013's increased levy amount. Accordingly, we reverse the superior court's ruling that the ballot title met RCW 84.55.050's requirements in this respect.

### D. LIMITED PURPOSE OF PROP. 1 FUNDS

EPIC argues that because Prop. 1's ballot title did not clearly and expressly state its limited purpose and was ambiguous and misleading to voters, the County cannot use the funds collected under Prop. 1 "to build a new . . . youth jail" under RCW 84.55.050(4)(c). Br. of Appellant at 31. We disagree.[10]

RCW 84.55.050(4) provides that "[i]f expressly stated, a proposition placed before the voters under subsection (1) or (2) of this section may . . . (c) [l]imit the purpose for which the increased levy is to be made under (a) of this subsection." RCW 84.55.050(1) incorporates .050(4)(c) by reference and states that "[t]he ballot of the proposition . . . shall clearly state the conditions, if any, which are applicable under subsection (4) of this section."

The ballot title for Prop. 1, as relevant here, stated that

[t]he King County council passed Ordinance No. 17304 *concerning a replacement facility for juvenile justice and family law services*. This proposition would authorize King County to levy an additional property tax for nine years to fund

included language that the "2013 levy amount would become the base upon which levy increases would be computed for each of the eight succeeding years." CP at 85.

[10] The County argues that even if the ballot title were insufficient, we should hold that the explanatory statement and Ordinance 17304 provided the requisite statement of the limited purpose. Because we hold that the ballot title expressly authorized a limited purpose use, we need not reach this argument.

capital costs to replace the Children and Family Justice Center, which serves the justice needs of children and families.

CP at 367 (emphasis added). Notably, however, 2012 county reports discussing the project and submitted in support of the County's summary judgment motion show that the existing facility was named the "Youth Services Center." CP at 97.

No case has interpreted RCW 84.55.050's limited purpose provision. However, we rely upon the ordinary, dictionary meaning of "clearly" and "expressly" to discern the statute's plain meaning. *See Burns*, 161 Wn.2d at 141.

Webster's Dictionary defines "[c]learly" as meaning "in a clear manner" and "clear" as "easily understood" and "without obscurity or ambiguity." WEBSTER'S 419-20. Again, "[e]xpressly" means "in direct or unmistakable terms" and "explicitly." WEBSTER'S 803. Thus, the plain language of RCW 84.55.050 requires that the limited purpose for the increased levy be stated in an "easily understood" manner, "without obscurity or ambiguity," "in direct or unmistakable terms," and "explicitly." WEBSTER'S 419-20, 803.

Here, the first sentence of the ballot title informed voters that the measure "concern[ed] a replacement facility for juvenile justice and family law services." CP at 367. The explanation that the measure concerned a replacement facility for juvenile justice and family law services met the statutory requirements of being stated in an "easily understood" manner, "without obscurity or ambiguity," "in direct or unmistakable terms," and "explicitly." WEBSTER'S 419-20, 803. Thus, the first sentence of the ballot title satisfied RCW 84.55.050's requirement that the limited purpose be "clearly" and "expressly" stated. *See* RCW 84.55.050(1), (4)(c).

EPIC argues that the ballot title was insufficiently specific because it did not inform voters that the project would replace the existing youth detention center, courthouse, administrative

17

offices, and on-site parking. We disagree: requirements of being "clearly" and "expressly stated" are not requirements of *specificity* but requirements of *clarity*.

EPIC also argues that the ballot title was misleading because the statement that levy funds would be used "to 'replace the Children and Family Justice Center'" inaccurately implied that there was an existing Children and Family Justice Center. Br. of Appellant at 29-30. But this argument overlooks the first sentence of the ballot title, which explained that the ballot proposition concerned "a replacement facility for juvenile justice and family law services." CP at 367. As discussed, we hold that this first sentence was a clear and express statement of the limited purpose.

Although there is no authority interpreting RCW 84.55.050(4)(c), in other contexts involving ballot titles, our Supreme Court has repeatedly held that arguably misleading nuances in ballot titles do not invalidate a law duly enacted by voters where no voter was likely to be deceived. *Wash. Ass'n for Substance Abuse & Violence Prevention (WASAVP) v. State*, 174 Wn.2d 642, 664, 278 P.3d 632 (2012). In *WASAVP*, the court held that the use of "'license fees based on sales'" in a ballot title to mean "taxes" was not "palpably misleading or false" and accurately "express[ed] the underlying subject contained in the body of the initiative." 174 Wn.2d at 661, 664-65 (addressing an article II, section 19 subject-in-title challenge to an initiative's ballot title). The court noted "numerous occasions" in which it had "rejected ballot title challenges based on nuances between terms." *WASAVP*, 174 Wn.2d at 664.

Guided by the principles expressed in *WASAVP*, we reject EPIC's argument that the use of the word "replace" rather than "construct" in Prop. 1's ballot title made Prop. 1's limited purpose unclear. As in *WASAVP*, no voter was likely to have been deceived or misled when the County inaccurately named the existing facility, particularly where the first sentence of the ballot title

expressed an accurate, limited purpose for Prop. 1's funds. Prop. 1 was neither vague nor obscure and its limited purpose was clear: a replacement facility for juvenile justice and family law services.[11]

We hold that the ballot title "clearly" and "expressly" stated the limited purpose for Prop. 1 funds, as required by RCW 84.55.050's plain language. For this reason, we hold that the superior court properly granted the County's summary judgment motion in this regard.

We reverse in part, affirm in part, and remand for further proceedings.

JOHANSON, J.

We concur:

MAXA, A.C.J.

LEE, J.

---

[11] Indeed, EPIC appears to admit that the stated purpose was to "'serve the justice needs of children and families.'" Reply Br. of Appellant at 20. EPIC asks that we hold that the ballot title allowed the County to use the funds to "serve the justice needs of children and families"—a purpose that would appear to include construction of a new Children and Family Justice Center. Reply Br. of Appellant at 20.